CHURCH *et al. v.* THE CHICAGO & ALTON RAILROAD
COMPANY, *Appellant.*

Division One, December 23, 1893.

|119  203
59a  645
119  203;
'132   32|
67a 601|

|119    203
96a  7677

1. **Contributory Negligence,** QUESTION FOR JURY, WHEN. The question of contributory negligence is one for the jury, where the facts are in dispute; and it is also one for the jury where the facts though undisputed, are such as to lead the minds of sensible men to different conclusions.

2. ———. A nonsuit because of contributory negligence disclosed alone by the defendants should be allowed with great caution, and it should never be awarded where the truthfulness of the evidence is open to doubt; for while jurors have no right to arbitrarily disregard the evidence of any witness, still it is for them and not for the court to say what weight and credit shall be given to the testimony of the various witnesses. (BARCLAY, J. *dissenting.*)

3. **Railroad:** SERVANT: DEATH FROM COLLIDING TRAIN: CONTRIBUTORY NEGLIGENCE. In an action by a widow for the death of her husband, a railroad employee, her evidence tended to show that while deceased was standing on the track in the performance of his duties, he was struck and killed by a train which approached from behind him without giving proper signals. Defendant's evidence tended to show that deceased went hurriedly on the track immediately in front of the approaching train, and made an effort to remove a cable which his duty required him to keep off the track. *Held* that the question of contributory negligence on the part of the deceased was one for the jury.

4. ———: FELLOW SERVANTS. The deceased, whose duty it was to assist in the operation of a rock crusher used in connection with the company's rock quarry, was not a fellow servant with the employees engaged in running and operating the train.

5. **Practice:** SERVICE OF NOTICE. It is not necessary to serve a new notice, *e. g.*, to produce papers, after the title of a cause has been changed because of the marriage of the plaintiff.

6. **Railroad:** SERVANT'S DEATH: COLLIDING TRAIN: INSTRUCTIONS. An instruction that the plaintiff in this action might recover if the jury believed that the deceased remained at his post of duty, and was, without fault on his part, struck and killed because of a failure to sound the whistle, requires the jury to find that such failure was the proximate cause of his death.

7. ———: ———: ———: ————. An instruction asked by defendant that if the deceased was standing on the track as the train approached attending to his usual business there, it was his duty to watch out for the train, and if by looking he could have seen or by listening he could have heard the train coming in time to have gotten out of its way, and he failed to do so, the verdict must be for the defendant, though the engineer gave no signal, was properly modified by adding, "unless the jury shall believe that deceased was thrown off his guard by such failure to give a signal."

8. ———: ———: ———: ————. An instruction given on plaintiff's request, which leaves to the jury the question whether the company's rules required the whistle to be sounded as trains approached the place where the deceased was killed, is not inconsistent with an instruction given at defendant's request that no rule was read in evidence requiring the whistle to be sounded on approaching the place of the accident, there being evidence that the rules of the company required the whistle to be sounded on approaching obscure (abrupt) curves and that there was evidence tending to show that the curve at the place of the accident fell within that designation.

9. Practice: INCONSISTENT INSTRUCTIONS. Inconsistency in instructions given at defendant's request is no ground for reversal of the judgment.

10. ———: WITNESS SWEARING WILLFULLY FALSELY: INSTRUCTION. Where the evidence of the witnesses is contradictory and the testimony of one of the witnesses is essentially different in some respects from that given by him in a deposition previously taken, there is no impropriety in instructing the jury that if it believed that any witness had willfully sworn falsely as to any material matter in the case they may disregard the whole or any part of his testimony.

*Appeal from Lafayette Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*George Robertson* for appellant.

(1) Charles Dixon and the engineer were fellow servants and defendant's instruction number 3 should have been given. (2) The court at the close of the evidence for the plaintiff should have instructed the jury to return a verdict for the defendant, for the reason that it was the duty of deceased to keep the

cable off the track, and failing to so do, his own negligence contributed directly to his death. *Evans v. Railroad*, 62 Mo. 52; *Turner v. Railroad*, 74 Mo. 602; *Yancy v. Railroad*, 93 Mo. 433; *Fletcher v. Railroad*, 64 Mo. 484. *First.* If the undisputed facts show that notwithstanding the defendant's negligence the plaintiff would have sustained the injuries complained of, but for his own negligence directly tending to produce them, it is the duty of the court to direct a verdict for defendant. *Powell v. Railroad*, 76 Mo. 80; *Lenix v. Railroad*, 76 Mo. 86; *Taylor v. Railroad*, 86 Mo. 457; *Cagney v. Railroad*, 68 Mo. 416; *Murray v. Railroad*, 101 Mo. 236; *Kelney v. Railroad*, 101 Mo. 67; *Webber v. Railroad*, 100 Mo. 194. *Second.* When the evidence fails to connect the negligence with the accident the court should direct a verdict for the defendant. *Holman v. Railroad*, 62 Mo. 562; Thompson on Trials, sec. 1678; *Buesching v. Gas Light Co.*, 73 Mo. 219. *Third.* It was the duty of the deceased to keep the cable out of the way of trains and to keep a look out for them. This was a risk that he assumed and the defendant was under no duty to warn him of approaching trains. *Ring v. Railroad*, 112 Mo. 220; Whit. Smith on Neg., p. 127, also, p. 133; Wood's Master and Servant, 678; *Price v. Railroad*, 77 Mo. 508; *Aldridge v. Furnace Co.*, 78 Mo. 559. (3) The court erred in permitting the plaintiff to introduce in evidence the notice to produce the rules of the company for her use in the trial of the case. (4) Under the whole evidence the defendant was entitled to a verdict, because it was conclusively shown that the deceased went upon the track immediately in front of a rapidly approaching train. This was proven by the plaintiff, yet not so distinctly as by the evidence for the defendant, and upon that point in the case there was no conflict between the testimony for plaintiff and defend-

ant. The court should therefore, under the evidence, have directed a verdict for the defendant. *Barry v. Railroad*, 98 Mo. 62; *Smith v. Railroad*, 21 S. W. Rep.; *Field v. Railroad*, 80 Mo. 203; Thompson on Trials, secs. 2262–2270; *Randall v. Railroad*, 109 U. S. 478. (5) There is a conflict between plaintiff's instruction number 2 and defendant's number 14. In the former it is submitted to the jury to say whether there was a rule in plaintiff's time card requiring engineers to whistle on approaching the crusher, and in the latter they are told there is no such rule therein. This is reversible error. *Stone v. Hunt*, 94 Mo. 475; *State v. Herrill*, 97 Mo. 105. (6) The court erred in striking from defendant's instruction number 10 the following: "The court instructs the jury that the evidence of credible witnesses who testify affirmatively that the whistle was sounded is entitled to more weight than the testimony of those who testify they did not hear it." *Isaacs v. Skrainka*, 95 Mo. 517; *Murray v. Railroad*, 101 Mo. 236. (7) Plaintiff's instruction number 6 was error because there was no conflict in the evidence or contradictory or false evidence given in the case. *Bank v. Murdock*, 62 Mo. 70; *White v. Maxey*, 64 Mo. 552; *State v. Buchler*, 103 Mo. 203. Instructions numbers 1 and 2 given for plaintiff, are misleading and do not properly apply the law to the facts of the case and they ignore the real facts as to how the accident occurred.

*Graves & Aull* for respondent.

(1) Charles Dixon and the engineer were not fellow servants. *Dixon v. Railroad*, 109 Mo. 413; *Russ v. Railroad*, 112 Mo. 45; *Parker v. Railroad*, 109 Mo. 362; *Schrœder v. Railroad*, 108 Mo. 322. The decision in *Dixon v. Railroad, supra,* was between

the same parties and is *res judicata*. *Bank v. Taylor*, 62 Mo. 338; *Adair Co. v. Owsly*, 75 Mo. 282; *Gaines v. Fender*, 82 Mo. 497; *McKinney v. Harval*, 36 Mo. App. 337; *Choteau v. Gibson*, 76 Mo. 38; *Overall v. Ellis*, 38 Mo. 209. (2) The court should not have given a peremptory instruction to find for defendant. The trial court did that before and this court reversed the trial court. *Dixon v. Railroad*, *supra*. The question of negligence is compound of law and fact. The court clearly would have erred in refusing to permit the jury to pass upon the question of fact as to the contributory negligence of Dixon. It was a matter of fact under proper instructions to be found by the jury and not by the court. *Dixon v. Railroad*, 109 Mo. 413; *Buesching v. Gas Light Co.*, 73 Mo. 219; *Flynn v. Railroad*, 78 Mo. 195; *Fink v. Furnace Co.*, 82 Mo. 276; *Petty v. Railroad*, 88 Mo. 306; *O'Hare v. Railroad*, 95 Mo. 662; *Stephens v. Railroad*, 96 Mo. 213; *Barry v. Railroad*, 98 Mo. 62; *Tetherow v. Railroad*, 98 Mo. 74; *King v. Railroad*, 98 Mo. 235; *Murry v. Railroad*, 98 Mo. 573. (3) There was no error in admitting the notice in evidence. It was served seasonably and being once served need not be repeated any more than an original summons. (4) Defendant was responsible for the failure of defendant to discharge his duty in sounding the whistle whereby Dixon came to his death. *Grumley v. Vulcan Works*, 61 Mo. 492; *Whalen v. Church*, 62 Mo. 326; *Cook v. Railroad*, 63 Mo. 397; *Stephens v. Railroad*, 86 Mo. 221; *Crane v. Railroad*, 87 Mo. 588; *Stoddard v. Railroad*, 65 Mo. 514; *Bromley v. Railroad*, 12 Mo. App. 594; *Railroad v. O'Brien*, 21 Pac. Rep. 32. (5) Where the verdict is for the right party and the instructions as a whole fairly present the case to the jury, this court will not reverse on account of a faulty instruction. Instructions are sufficient when taken as

a whole if they embrace all the issues and are not calcu-lated to mislead (*Schrœder v. Railroad*, 108 Mo. 322; *Reilly v. Railroad*, 94 Mo. 600); and need not contain in one instruction all the facts necessary to be considered. *Schrœder v. Railroad*, 108 Mo. 322; *Russell v. Ins. Co.*, 55 Mo. 585.

BLACK, P. J.—The plaintiff, Kate Church, brought this suit to recover damages for the death of her for-mer husband, Charles Dixon. Since that time she mar-ried William Church. The case was here before on an appeal from the ruling of the trial court, sustaining a demurrer to the plaintiff's evidence (109 Mo. 413). On the last trial the defendant produced much evi-dence, and at the close thereof, asked the court to give an instruction that on the pleadings and all the evidence the plaintiff could not recover, which the court refused, and this ruling is now assigned as error, the claim being that the undisputed evidence shows contributory negligence on the part of the deceased.

Dixon, the former husband of plaintiff, was run over and killed by a west bound passenger train on the defendant's road. He was, at the time, in the employ of the defendant, assisting in operating a rock crusher. The defendant's road runs east and west at the place of the disaster. The rock crusher was located on the north side of the railroad track, and the rock quarry on the south side. An incline plane track ran down from the upper part of the crusher to the north rail of the railroad track, thence south across the railroad track by what is called a strap track, and thence on south some eight feet to a turntable, where tracks radiated out into the quarry pit. Small cars holding about twenty bushels were loaded with rock and then run out to the turntable, where they were adjusted to the incline track and then pushed north to the south side

·of the railroad track. They were then drawn over the railroad track and up the incline to the crusher by a wire cable attached to a drum in the crusher. The cable was attached to the cars by means of a clevis. It was the duty of Dixon to attach the cable to these small cars when ready to be drawn up, to detach it when they came back unloaded, and to keep the cable off the railroad track.

The railroad track, looking east from the crusher, runs on a curve to the south, close to and around a bluff on the south of the railroad. At the time of the accident the quarry had been worked out some fifty feet from the railroad track south into the bluff, and some fifty feet east and west of the turntable. A person standing on the railroad track where crossed by the strap track, could see east along the railroad for a distance of 1,035 feet, but standing on the turntable, he could not see east so far. For a more detailed description of the surroundings, reference is made to the statement of facts in the former opinion.

The charge in the petition is, that defendant maintained a whistling post one hundred and fifty yards east of the crusher, at which persons in charge of west bound trains were required to sound the steam-whistle for the protection of passengers and employees, and that on the occasion in question the engineer neglected and failed to give the signal, by reason of which Dixon was killed. The plaintiff produced some evidence tending to show that there was a post with a whistling board on it just east of the crusher; and she produced much evidence to the effect that it was customary for the trains going west to whistle at that point, to give warning to the men at work at the crusher. She also produced evidence of a positive character that the whistle was not sounded or the bell rung on the occasion in question, and this evidence was supported by the testi-

VOL. 119—14

mony of persons employed at the quarry, who say
they heard no whistle or bell.   On the other hand the
evidence of the fireman and engineer is quite positive
that they sounded the whistle and rang the engine bell.

The evidence having a more direct bearing upon
the issue of contributory negligence is as follows:    Mr.
Boyett, a witness for the plaintiff, testified:    "I was
working in the quarry at a point thirteen or fourteen
feet south of the south rail of the railroad track and
about  thirty feet east of the turntable; did not hear or
see the train coming from the east until it was at my
side; I did not see Dixon right at the time the engine
passed me but I saw him just after it passed me; I then
saw him on the track about the center of the crossing;
he was standing with his head down, pointing to the
northwest."    On   cross-examination  he said:    "The
engine was forty or fifty feet from the strap track when
I first heard it; I then looked to see what Dixon was
doing;  he  seemed  to  be trying to clear the track; he
seemed to be in a grasping position, grabbing at the
cable or something that was on the track; I did not see
him go on the track; I did not see him when the engine
struck him; the engine cut off my view of him; the
engine was very close to him when he made the grab—
right on him—I can not give the exact distance; I can
not say whether any of the little cars were standing by
the side of the railroad track or not; the moment the
train caused me to look up, I saw him on the track, and
I do not know what he was doing before that time; he
was grabbing at the cable when I first saw him."

The  evidence of Mr. O'Brien, the foreman of the
crew operating the crusher and quarry, is to the effect
that Dixon, in attaching and  detaching the cable,
usually stood in the center of the main track with his
back to the east; that he saw Dixon immediately after
the train passed; he was then lying on the north side

of the main track about forty feet west of this strap track. Other evidence shows that these small cars went up the incline track and back to the railroad track once in every five or eight minutes.

The witnesses for the defendant testified as follows:

*Pat Moore:* "I was working in the quarry twenty or thirty feet southeast of the cable; I heard the train before I saw it; it was three hundred or four hundred feet off when I first heard it, and it was about two hundred feet from me when I first saw it coming; I saw the cable on the track, and then looked for Dixon; he was then twelve or fourteen feet southwest of the cable. I saw him throw his gloves and a piece of board used for gauging tracks, and run across to the main track; he checked up and made a scrape or kick with his foot at the cable; that was the last I saw of him; the cow-catcher shaded me and I could not see him; he was looking to the east when he threw down his gloves and this board; it looked to me like he was looking at the train coming; he ran as hard as he could; can not say how far he was from the engine when he started; he was moving when I saw him kick at the cable; at the time Dixon was killed the small rock cars were all being loaded, except one empty car, which was standing on a track which runs due south of the turntable." On cross-examination the witness stated: "The last car came down the incline five or six minutes before Dixon was killed; he had his face to the east when in the act of kicking; his left foot was over the north rail, and he scraped or kicked with his other foot, and was in a stooping position; the engine was about fifty feet from him when he started, and he had about twenty-five feet to run; when he got on the main track the engine might have been ten or fifteen feet from him."

*Thomas Griffin:* "I attended to the cable in the

crusher; when I last saw Dixon he was running to the main track to get the cable off of it; he was out south of the turntable fixing some tracks; I was trying to pull the cable off the track; I saw him running toward the track, and he was within three feet of the track when I last saw him; the cable caught on something at the bottom, and I looked down to see what was holding it; I next saw Dixon lying on the south side of the main track."

*Miller Hooper:* "I was there at work and saw the train strike Dixon; I was north of the railroad track; he was out in the quarry fixing a track; I saw him throw down his gloves and gauge and run to the main track; he made a leap to get across the main track; he got his foot over the north rail, in a stooping position, and made a kick and grab at the cable, and the engine struck him; the steam chest struck him. When he threw down his gloves and started to run, the engine was about one hundred and fifty feet from the place where he was when struck; to the best of my judgment, I judge he was ten or twelve feet from the engine when he jumped across the track; when struck he was thrown twenty or twenty-five feet north of the main track; I was ten feet north of the main track and one hundred and fifty feet west of the crusher; when I first saw the train coming it was one hundred and fifty feet east of the strap track." On cross-examination the witness said: "I saw him throw down his gloves and knew what they were." Being asked if he did not know that Dixon had his gloves on when found after he was struck, he said: "Yes, sir, it seems to me he had his gloves on; I was mistaken." "When the train ran up to the strap track Dixon leaped over the main track, and just as he struck the north rail of the railroad track the train struck him; he was getting out of the way of the train as fast as he

could; as far as I could see, the engine struck him on the right hip." "Q. The train came upon Dixon unawares, did it not? A. Yes, sir, I guess it did. Q. When the train came upon Dixon he was at the south rail of the main track, was he not? A. Yes, sir. Q. And that is the place he leaped from, was it not? A. Yes, sir."

The engineer testified that he was sitting on the right hand side of his cab looking forward; that he saw the cable on the track when within twenty feet of it; that his train was running about twenty-five miles per hour and that he was about five minutes behind time; that he did not see Dixon and there was no man on the track when he came around the curve in sight of the crusher; that Dixon was in the air going from the engine in a northwest direction when he first saw him; that he could not see a man standing in the middle of the main track when nearer than twenty feet; and that he could not see a man on the south rail when nearer than seventy-five feet; that he thinks the cow-catcher struck him. "Q. Suppose he had been standing on the north rail, his leg across the north rail? A. He would have been knocked right down, not thrown up at all. If on the north side, he would have been struck with the end of the bunting beam; he could not have been struck by the steam chest unless he was up in the air."

The first contention of the appellant, which we will notice, is this, that the undisputed evidence on both sides shows that the deceased went upon the track immediately in front of a rapidly approaching train, and that such an act constitutes contributory negligence. Although contributory negligence is a matter of defense in this state, and the burden of proof rests upon the defendant, still, if it appears, without any conflict of evidence, from the plaintiff's

own case, or from the cross-examination of his witnesses, or from other undisputed evidence in the cause, that the injured party was guilty of negligence proximately contributing to produce the injury, the court should direct a nonsuit. But the question of contributory negligence is one for the jury where the facts, are in dispute; and it is also one for the jury where the facts, though undisputed, are such as to lead the minds of sensible men to different conclusions. 2 Thompson on Trials, sec. 1680; *Roddy v. Railroad*, 104 Mo. 250; *Weber v. Railroad*, 100 Mo. 195; *Barry v. Railroad*, 98 Mo. 62.

According to the evidence of Mr. Boyett, Dixon was, immediately before the collision, on the strap track about the middle of the railroad track, in a stooping position, with his head pointed to the north-west, that is to say, with his back towards the approaching engine. This evidence and the evidence of O'Brien leaves Dixon in the position he usually occupied when attaching and detaching the cable, and a fair inference to be drawn from it is, that Dixon was engaged in that work when struck. This evidence therefore tends to show that Dixon did not know of the approaching train. On the other hand Moore says the small cars were all being loaded except one, which was standing on a track south of the turntable. This evidence of Moore being true, Dixon could not have been in the act of attaching or detaching the cable to a rock car. Besides this the evidence of Moore and of the other two witnesses for defendant is to the effect that Dixon was thirty feet south of the railroad track; that he ran from that place to the railroad track and attempted to move the cable then on that track. If the evidence of these three witnesses is true, then Dixon evidently saw the approaching train and went upon the railroad track immediately in front

of the approaching engine. Such an act would be gross negligence on his part, contributing to the injury. But can it be said that the evidence of these three witnesses stands undisputed? We think not.

In the first place, there is a material difference between Boyett and the witnesses Moore, Griffin and Hooper in this: the first places deceased in the middle of the track with his back to the engine, while according to the other three witnesses he was at no time in that position. Some of the cross-examination of Hooper tends to support the evidence of Boyett. But there is another reason why this court cannot say the evidence of defendant's witnesses stands undisputed. Moore and Hooper state in positive terms in their direct examination that Dixon threw down his gloves and ran to the railroad track, and yet Hooper concedes, on cross-examination, that Dixon had his gloves on when found dead. This discrepancy and other features of the case show that the evidence on both sides ought to be examined by the triers of fact with great care. A nonsuit because of contributory negligence disclosed alone by the defendant's witnesses should be allowed with great caution, and it should never be awarded where the truthfulness of the evidence is open to doubt; for while jurors have no right to arbitrarily disregard the evidence of any witness, still it is for them and not the court to say what weight and credit shall be given to the testimony of the various witnesses. The question of contributory negligence ought to be submitted to the jury, where it becomes necessary to ascertain the credit to be given to the testimony of the witnesses, and that is the case here.

2. It was the duty of the deceased to keep the cable out of the way of trains, and he assumed the risks incident to that work; but he did not assume risks arising from negligent acts of those in charge

of the train.    This follows from the ruling made on the former appeal, that Dixon was not a coservant with those in charge of the train.    The    present    case is entirely unlike that of *Evans v. Railroad*, 62 Mo. 49. There the plaintiff had charge and control of the train which inflicted the injury, which is not the case here.

3. After the plaintiff had introduced her evidence she read a notice to the defendant to produce on the trial a copy of the rules and a copy of the time card in force at the time of the accident, regulating the operation of trains, service of which had been duly accepted.    The defendant objected because it "was a notice in the other case, and not in this, and it ought not to go to the jury."    Counsel for plaintiff then stated:    "It is not offered to go to the jury; it is offered to make the record complete and to show why parol testimony has been received concerning the same matter."

It is enough to say this notice was not read as evidence to the jury, and whether it was properly or improperly heard by the judge is wholly immaterial. Nor was it necessary to serve a new notice after the title of the cause had been changed because of the marriage of plaintiff.    It remained the same suit, though it became necessary to make the second husband a party.

4. Objection is made to the first and second instructions on the ground that they fail to require the jury to find that the failure to sound the whistle was the proximate cause of the injury.    The first instruction declares, among other things:    "And if the jury further believe from the evidence that at the time when said train killed said Dixon he was carefully and prudently discharging his duties in handling said cable while said train was approaching, and that the engineer in charge failed to sound said whistle at or

near said whistling point, and that by reason of the failure to sound said whistle, said Dixon, while so engaged in the discharge of his duty, was not warned of the approach of said train so as to enable him to make his escape, and that by reason of the failure to sound said whistle said Dixon remained at his post of duty and in discharge thereof while detaching said cable or removing the same from the track in a careful and prudent manner and without any fault of his own, was struck and killed by said train or engine, then the jury shall find for plaintiff."

And the second instruction is in these words:

"2. If the jury believes from the evidence that Charles Dixon was in the regular discharge of his duties attending the cable at the crusher of the defendant, exercising ordinary care, and that he would not have received the injuries resulting in his death if the defendant or its engineer had sounded the whistle on approaching the said crusher, and that the defendant's rule or time card required such whistle to be sounded on approaching the same and that the defendant or its engineer or other servants failed to sound said whistle on approaching the crusher on the morning of December 20, 1886, and that by giving such signal the death of Dixon would have been avoided, they will find for the plaintiff."

The first of these instructions, it will be seen, requires the jury to find that Dixon remained at his post of duty and was, without fault on his part, struck and killed because of a failure to sound the whistle. Surely this makes the failure to sound the whistle the proximate cause of his death. We think the objection not well taken.

At the request of the defendant the court gave some instructions, two of which are as follows:

"5. If the jury believe from the evidence in

the case that Charles Dixon left the cable across the track, and afterwards saw or heard the train approaching, and undertook to remove the cable to prevent the the train from running over it, and in doing so was struck by the train, the verdict must be for the defendant, whether the whistle was sounded or not."

"8. Should the jury believe from the evidence in the case that Charles Dixon was standing on the track of the road as the train approached, attending to his usual business, then it was his duty to watch out for the train, and if by looking he could have seen, or by listening he could have heard the train coming in time to have gotten out of its way, and he failed to do so, the verdict must be for the defendant, though the engineer failed to give any signal of his approach, and though Dixon was at the time trying to get the cable off the track, unless the jury shall believe that Dixon was thrown off his guard by such failure to give a signal."

The court added to the eighth the last clause, "unless the jury," etc., and to this ruling, error is assigned. These two instructions place the entire defense of contributory negligence before the jury in a most favorable light for the defendant. But for the qualifying words added to the eighth instruction, it would have been in effect a demurrer to the evidence. They were properly added.

5. It is again insisted that there is a conflict between plaintiff's second instruction before set out, and the one numbered 14 given at the request of the defendant, which declares "that in the rules of defendant put in evidence there is contained no rule requiring the defendant's engineers, drawing regular trains, to ring the bell and sound the whistle, or either, upon approaching the rock crusher in question."

To an understanding of this objection it is neces-

sary to look to the evidence and the order in which it was produced on the trial. The plaintiff in making out her case in chief, read in evidence a deposition of the fireman, taken by the defendant, in which he testified on the cross-examination, that there was a whistling post just east of the switch track at the crusher; that the engineer sounded the whistle and rang the bell at that place, because he knew men were working at the crusher; and that they had been giving these signals ever since the crusher was erected. The plaintiff also read the deposition of the conductor taken by defendant, in which he said there was no requirement to whistle or ring the bell at this place, more than at any other curve; that there was a rule in the time card for the sounding of the whistle at obscure curves, but not for ringing the bell. According to other evidence this was an obscure curve.

On behalf of the defendant, the engineer testified at the trial that he could not remember about that morning in particular, but that he always whistled down about the switch to warn the men at the crusher; that he had no orders about running trains other than those in the book of rules; that he did not know anything about obscure curves; that railroad men called curves obscure, but the time card did not call for them; that when Dixon was killed he was running under time card and rules which took effect November 14, 1886. Dixon was killed on the twentieth of December, 1886.

In rebuttal the plaintiff read in evidence the deposition of the engineer previously taken in the case, in which he said the rule was to "whistle at all whistling posts, road crossings, obscure curves—the obscure curves are meant more for wild than for regular trains" and that the rules were general and applied to all engineers on the road.

The defendant put in evidence the time card and rules of the fourteenth of November, 1886, in which it is provided: "Engineers must run with great caution around abrupt curves, sounding the whistle at least 80 rods before entering the curve, and continuing to sound at short intervals until the curve is passed." The expression *abrupt curves* used in the rules read in evidence by the defendant, evidently means the same thing as *obscure curves* as used by the witnesses.

The fourteenth instruction given at the request of the defendant ought therefore to have been refused; but we cannot say the giving of it renders the instructions inconsistent. The plaintiff's instruction leaves it to the jury to say whether the defendant's rules and time card required the whistle to be sounded on approaching the crusher. Under this instruction and the evidence in the case, the jury might well find that the curve passed over by the train before reaching the crusher was one within the meaning of the rule read in evidence, and it was therefore the duty of the engineer to sound the whistle when approaching the crusher. The defendant's instruction told the jury that the rules read in evidence did not require the engineer to sound the whistle upon approaching the crusher in question. It seems to inform the jury that the rules do not specifically mention or point out this crusher as a place where the whistle must be sounded, but it was certainly not designed or intended to take the question whether the curve in question was one within the meaning of the rules, away from the jury.

That it was not designed to take this question away from the jury is manifest when we examine instruction number 14 *a* given at the request of the defendant, which contains this statement: "The court instructs the jury that although the jury may believe from the evidence in the case, that defendant had a

rule then in force requiring engineers to sound the whistle on the engine on approaching this crusher, that fact did not relieve the deceased of his duty to look out" etc. This instruction, asked by the defendant and given by the court, leaves it to the jury to say whether the rules of defendant required the engineer to sound the whistle on approaching the crusher, and is in perfect accord with the instruction given at the request of the plaintiff.

But if it can be said that there is any inconsistency in the instructions, that inconsistency constitutes no ground for reversal; because the inconsistency is between instructions which were given at the request of the appellant itself. 98 Mo. 583.

6. The court, at the request of the plaintiff, told the jury that if they believed any witness had willfully and intentionally sworn falsely as to any material fact in the case then they were at liberty to disregard the whole or any part of the testimony of such witness. The objection urged to this instruction is, that there was no contradictory or false evidence in the case. Some of the witnesses testified in the most positive terms that the whistle was not sounded, while others testified in a like positive manner that it was sounded, and they were all in a position to see and hear. This was a material issue in the case. There was also a conflict in the evidence in other respects. The evidence given by one witness on the trial was in some respects essentially different from that given by him in a deposition previously taken in the cause. On this state of the evidence, there was no impropriety in giving this instruction, and it follows that the court did not err in giving it.

As to the other objections made in the appellant's brief, it is sufficient to say that we think they are not well taken. The judgment is affirmed, MACFARLANE, J., not sitting. The other judges concur, BARCLAY, J.,

agreeing in the result, but not to all that has been said.

SEPARATE OPINION.

BARCLAY, J.—While agreeing to the judgment, my consent is not given to the intimations in the first paragraph in the foregoing opinion to the effect that if the testimony of defendant's witnesses, to contributory negligence of deceased, appeared "without any conflict of evidence," "the court should direct a nonsuit." On that point it is my opinion that where the burden of proof under the pleadings is on one of the parties, upon a material issue in the cause, the question of the credibility of the oral testimony offered, on that issue, even though uncontradicted, is one for the jury and for the trial judge in reviewing the verdict. It is not a question for this court under the constitution of Missouri guaranteeing trial by jury in actions at law; and my assent is not accorded to any observations that may be supposed to impair the force of the earlier rulings on this subject. *Bryan v. Wear* (1835), 4 Mo. 106; *Steamboat v. Matthews* (1859), 28 Mo. 248; *Gregory v. Chambers* (1883), 78 Mo. 294; *Schroeder v. Railroad* (1891), 108 Mo. 322; *Seligman v. Rogers* (1893), 113 Mo. 649.