HARRIET P. DUNLAP, Respondent, v. MALLINCKRODT CHEMICAL WORKS, Appellant.

St. Louis Court of Appeals, July 15, 1911.

1. NEGLIGENCE: Elevators: Necessity of Keeping Operators: Ordinance. While a city ordinance, providing that the users of power elevators shall employ a competent person, not less than sixteen years of age, to operate them, does not require that an operator be at all times stationed on the elevator, it does at least require that a competent person, not less than sixteen years of age, specially charged with the duty of operating the

elevator be maintained on every floor of the building, so as to be available to every one desiring to use the elevator.

2. ———: ———: ———: ———: Action for Wrongful Death: Proximate Cause: Master and Servant. In an action for the wrongful death of an employee, crushed in an elevator, *held*, under the evidence, that whether defendant's failure to comply with an ordinance requiring the employment of competent elevator operators was the proximate cause of death was a question for the jury.

3. ———: ———: Duty of Operator. Among other duties of one competent to be given charge of an elevator is that of taking proper precaution for the safety of those known to be near the elevator opening, before moving the elevator.

4. MASTER AND SERVANT: Method of Work: Waiver of Rules: Contributory Negligence. A rule established by a master that an elevator was not to be used except to transport freight was waived by the constant use of the elevator by employees as a passenger conveyance, with the permission of the master's representatives, and hence would not be available to the master as the predicate of a claim that a servant injured by the negligent operation of the elevator was guilty of contributory negligence.

5. NEGLIGENCE: Contributory Negligence: Entering Elevator: Master and Servant. It is not negligence as a matter of law for a servant to enter an elevator, which is run upon signals by other employees and without a special operator, at the instant of its first movement in response to such a signal.

6. ———: ———: Presumption of Due Care: Master and Servant. In the absence of proof to the contrary, there is a presumption that an employee, who was killed by being crushed in an elevator, conducted himself with ordinary care for his safety, at the time of entering the elevator.

7. ———: ———: Question for Jury: Master and Servant. In an action for the wrongful death of an employee, crushed by an elevator, *held*, under the evidence, that the question of decedent's negligence was for the jury.

8. ———: ———: Declaring as a Matter of Law. The court may declare the negligence of the injured party as a matter of law, when it appears, without any conflict in the evidence, from plaintiff's case.

9. WITNESSES: Vouching for Credibilty: Extent of Rule. Although the party placing a witness on the stand vouches for his credibility,

Dunlap v. Chemical Works.

so as to preclude the right of direct impeachment, he is not conclusively bound by the testimony of the witness as to every detail and in all events.

10. ———: ———: ———: Negligence: Trial Practice. In an action for wrongful death, testimony by one of plaintiff's witnesses that decedent had made a statement after he was injured, which tended to convict him of contributory negligence, was not conclusive on plaintiff, especially in view of the fact that the witness was in defendant's employ and that his memory concerning the statement was not clear, and hence the question of decedent's contributory negligence, under this evidence, was for the jury.

11. NEGLIGENCE: Contributory Negligence: Question for Jury. The question of contributory negligence is always for the jury where the facts are in dispute, or where, though undisputed, they are such as to cause sensible men to arrive at different conclusions.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

AFFIRMED.

*Barclay, Fauntleroy & Cullen* for appellant.

(1) The ordinance does not require the operator or operators to ride upon the elevator; there is no evidence that those who operated it were not qualified in all respects as the ordinance requires. There was no proof of any failure to obey the ordinance, as such law has been construed by the Supreme Court. The burden of proof on these points was on plaintiff and it was never discharged. Purcell v. Shoe Co., 187 Mo. 276. (2) No connection, direct or remote, is proved between any act for which defendant is answerable and the fatal accident. Without such proof, defendant is not liable. Purcell v. Shoe Co., 187 Mo. 276; Davis v. Coal Co., 209 Pa. 153; Borck v. Bolt Works, 111 Mich. 129. Breach of an ordinance creates a liability "if the violation of the municipal law caused or contributed to the personal injury," but not otherwise. Channon Co. v. Hahn, 189 Ill. 32. In Missouri,

this is a familiar and elemental rule in the law of this subject.   Kelley v. Railroad, 75 Mo. 138; Holman v. Railroad, 62 Mo. 562; Evans v. Railroad, 17 Mo. App. 624; Wallace v. Railroad, 74 Mo. 594; Stoneman v. Railroad, 58 Mo. 503.   (3) The elevator was said to be "slow" of speed; but there was no evidence of its rate of progress in feet or otherwise; no evidence of its rate at the time of the accident; none as to the space or time necessary to stop it then or at any time.   Had an operator been aboard when Dunlap was caught we have nothing in the evidence to show that the accident could have been averted by the utmost diligence, within the three or four feet the elevator ran after he jumped. Hence no causal connection is proven between any want of an operator on the elevator and the death of decedent, although the ordinance does not require the operator to be on the elevator.   Hence, on the issue of defendant's alleged fault, there is a total failure of proof.   Stagg v. Tea Co., 169 Mo. 489; Purcell v. Shoe Co., 187 Mo. 276; Harlan v. Railroad, 18 Mo. App. 483; Ubelmann v. Ice Co., 209 Pa. 398; Hill v. Co., 188 Mass. 75. There is, however, no "humanitarian rule" pleaded, and hence it is not available. Grout v. Railroad, 125 Mo. App. 552.   (4) If the ordinance is correctly interpreted to mean that some "one or more particular persons" must be employed to run this elevator, the ordinance would be unreasonable and void, as imposing an unnecessary embargo on the business of defendant touching the use of its property.   City v. Withaupt, 61 Mo. App. 275; Corrigan v. Gage, 68 Mo. 541; Riley v. Cape Girardeau, 72 Mo. 220.   If (as we do not believe) the ordinance forbids the occasional use of a freight elevator, in the manner shown by the evidence in this case, prior to the voluntary exposure of the decedent to an unexpected risk, then we claim the ordinance would be void because unreasonable.   (5)   The act of the decedent directly contributed to his injury and death,

and precludes recovery by plaintiff. George v. Mfg. Co., 159 Mo. 333; Am. Linseed Co. v. Heins, 141 Fed. 45; Cullen v. Higgins, 216 Ill. 78; O'Brien v. Steel Co., 100 Mo. 183; Knox v. Power Co., 69 Hun 231; Hoehman v. Moss Co., 4 Misc. Rep. 160; Railroad v. Warren, 149 Fed. 658; Shumate v. Railroad, 158 Fed. 901; Ramsdell v. Jordan, 168 Mass. 505; Knapp v. Jones, 50 Neb. 490; Guichard v. New, 9 N. Y. App. Div. 485; Man v. Morse, 3 Colo. App. 359. Where the employee, with knowledge of the facts and of the danger, does an act of his own volition which contributes to his injury, he cannot recover. Gallagher v. Snellenburg, 210 Pa. 642; Railroad v. Dewees, 153 Fed. 56; Beidler v. Brandshaw, 200 Ill. 425; Burns v. Chem. Co., 65 App. Div. 424. The elevator was intended for freight only; and it was a trespass to use it otherwise; especially on the part of the manager of the building whose duty required him to enforce the orders on the signs, and to obey them personally. Ball v. Hauser, 129 Mich. 397; McCarty v. Foster, 156 Mass. 511; Sievers v. Box Co., 50 N. E. 877; Wise v. Ackerman, 76 Md. 376. (6) It was fatal contributory negligence in decedent to put himself into the place of danger where he was injured, when he was fully aware of the hazards arising from the mode of operating the elevator. Freeman v. Mill Co., 70 Hun 530; Taylor v. Mfg. Co., 143 Mass. 470; Dieboldt v. Baking Co., 72 Hun 403; Headford v. Mfg. Co., 23 Ont. Rep. 335; Omaha Co. v. Sanduski, 155 Fed. 897; Russ v. Co., 110 Iowa 743; Juchatz v. Co., 120 Mich. 654; Hoard v. Mfg. Co., 177 Mass. 69; Butler v. Frazee, 211 U. S. 459; Am. Co. v. Heins, 141 Fed. 45; Railroad v. Wilhoit, 160 Fed. 440; Fed. Co. v. Swyers, 161 Fed. 687; U. S. Smelt Co. v. Parry, 166 Fed. 407; Mooney v. Carter, 152 Fed. 147; Lumber Co. v. Brandvold, 141 Fed. 919. (7) The evidence shows that decedent could safely have used the stairway to return to the second floor, but he chose the more dangerous way of trying to jump on the

rising elevator. Such choice of a dangerous way, when a safer was open, is of itself negligence in law and defeats recovery. Smith v. Box Co., 193 Mo. 715; Moore v. Railroad, 146 Mo. 582; 1 Bailey, Personal Inj., M. and S., sec. 1121; Crookston Co. v. Boutin, 149 Fed. 680. (8) The disregard by decedent of the order of defendant (by the signs) as to the manner of using the elevator, is a bar to this action. Matthews v. Railroad, 126 S. W. 1005; Railroad v. Reagan, 96 Tenn. 128; Railroad v. Collier, 157 Fed. 347; Ingram v. Taylor, 73 App. Div. 129; Railroad v. Craig, 80 Fed. 495; Wolsey v. Railroad, 33 Ohio St. 229; Rittenhouse v. Railroad, 120 N. C. 547. (9) Getting on a moving elevated train and the act of decedent here are closely alike in nature, and each indicates an assumption of the risk involved thereby. Tobin v. Railroad, 211 Pa. 457; Carroll v. Transit Co., 107 Mo. 653. (10) The court erred in not directing a verdict for defendant as the plaintiff's own evidence and all fair inferences therefrom disclose no cause of action; and judgment should have been entered for defendant. Purcell v. Shoe Co., 187 Mo. 276; Matthews v. Railroad, 126 S. W. 1005; Nolan v. Shickle, 69 Mo. 336.

*Pearce, Davis & Curlee* for respondent.

(1) Breach of municipal ordinance gives rise to right of action by party injured thereby. Sluder v. Transit Co., 189 Mo. 107. (2) Habitual disregard of the posted rule prohibiting the use of the elevator except for freight only gives rise to a presumption that the rule was waived by the master. Francis v. Railroad, 127 Mo. 658; Barry v. Railroad, 98 Mo. 62. (3) Failure to have an elevator operative employed was a violation of the ordinance, and the question of causal connection or proximate cause was one for the jury. H. Channon Co. v. Hahn, 189 Ill. 28; Dallemand v. Saalfeldt, 175 Ill. 310. (4) Violation of the ordinance and injury being shown, there is a presump-

tion that the one caused the other. Schlereth v. Railroad, 96 Mo. 509; Hanlon v. Railroad, 104 Mo. 381. (5) Contributory negligence being an affirmative defense, must be proven by defendant, and cannot be left to conjecture. Weller v. Railroad, 120 Mo. 635; Buesching v. Gas Light Co., 73 Mo. 219; Schultz v. Moon, 33 Mo. App. 329. (6) The servant does not assume any risk arising from the master's negligence or his failure to comply with the requirements of law. Obermeyer v. Chair Mfg. Co., 120 Mo. App. 59; Affirmed 229 Mo. 97; Wendler v. House Furnishing Co., 165 Mo. 527; Blair v. Hebel, 103 Mo. App. 621; Durant v. Lexington Coal Co., 97 Mo. 62; Jewel v. K. C., etc. Co., 132 S. W. 703.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of the death of her husband through the alleged negligent wrongful act of defendant. Plaintiff recovered and defendant prosecutes the appeal.

Defendant, incorporated, is a manufacturing chemist in the city of St. Louis and plaintiff's husband was in its employ, at the time of his death, as a chemist. Plaintiff's husband came to his death through being crushed between the floor of an elevator and the beam over the entrance thereto, in defendant's establishment. The elevator which occasioned his injury and death was maintained by defendant between what is known as its morphine and cocaine buildings, and was entered from either building. The two buildings referred to are four or five stories in height and the elevator communicates with each floor. The particular elevator involved here was designed orginally for carrying freight and parcels from one floor to another but was continuously used as a passenger elevator as well, by the employees of defendant. The elevator was operated by electric power and those who desired to use it entered therein and pulled a rope which started

the carriage in motion. It appears that no particular person or persons were employed by defendant to operate the elevator and that it was moved from floor to floor by any one of the employees who desired to use it. When one desired to employ the elevator for any purpose, he first, upon approaching it, pressed a button which sounded a bell. If the elevator were in use by another person at the time, such person would halloo, and the party desiring to use it would wait his turn. This arrangement and custom prevailed, to the end of preventing conflict in the use of the elevator by persons on the different floors. It seems that the elevator, operated as said before by electric power, passed up and down the shaft unattended by a regular operator, in obedience to a rope under the hand of a person desiring to move it, situate on any floor of the building. If, perchance, the elevator was at the bottom, on the first floor, and an employee on the fourth floor desired to use it at the fourth floor, he would reach within the shaft and pull down on the rope which operated perpendicularly in the northwest corner of the elevator shaft. By thus pulling down on the rope, the power would be communicated so as to pass the elevator upward, until it was stopped by readjustment of the rope which disconnected the power. If the elevator was to be retained at any particular floor for service, such as loading or unloading, a clutch annexed thereto was brought into play and made it fast at the place desired, so that one on another floor would be unable to remove it by pulling the rope. Though this be, in a general way, descriptive of the manner of operating the elevator involved here, it was constantly enjoined upon every one about the works that, before the elevator should be moved at any time, the electric bell must first be sounded, to the end of ascertaining whether another was using it, and this signal every one understood.

The direct proof as to how plaintiff's husband came to his death is meager, as no one witnessed the occurrence. It appears plaintiff's husband was a young man about thirty-two years of age, and he had charge of the morphine building under Dr. Lamar, defendant's superior officer. Mr. Dunlap had been engaged in a conversation with one of defendant's employees on the first floor of the building, not far from the elevator, and left him, presumably to return to his office on the second floor. The employee with whom decedent had been in conversation says that but a moment after decedent left him, he heard a cry from the elevator as though some one were injured, and it proved to be Mr. Dunlap. About the time Mr. Dunlap entered the elevator on the first floor, Mr. Tompkins, an employee of defendant, on the third floor, sounded the electric bell and, hearing no answer thereto, applied the power which caused it to ascend. Though no one saw him enter the elevator, Mr. Dunlap did so from the east side thereof, on the first floor, and as it arose, he was crushed between the floor of the elevator and a beam adjacent over the entrance thereto. It is not shown how fast this elevator moves, but the evidence is that it proceeds slowly, and Mr. Dunlap came to his injury when the floor of the elevator was about nine feet above the first floor of the building, on which he entered it.

Section 2237 of the ordinances of the city of St. Louis provides that the users of all power elevators shall employ a competent person to operate and run the same, who shall have a proper knowledge of all the parts of the machinery for the working of the elevator of which he may have charge, and who shall not be less than sixteen years of age and of industrious and sober habits. This ordinance is set forth in the petition, and a breach of the obligation which it enjoins is declared upon as the ground of recovery. All of the proof shows the elevator was in perfect condition,

so far as its mechanical makeup is concerned, and that its every part responded properly in the hands of one undertaking to operate it.

The circuit court referred the case to the jury as though the ordinance devolved upon defendant the duty to maintain some competent person or persons over sixteen years of age in charge of the elevator and it was not a compliance therewith to permit any employee not so specially charged to operate it as he chose. It is argued here on the part of defendant that, though such be true, no recovery may be allowed, for the reason it does not appear that the dereliction averred and proved operated proximately to occasion the death of plaintiff's husband. It is said that, under the ordinance as construed by the Supreme Court, no obligation is enjoined on defendant to keep an operator actually upon the elevator, and that unless one was upon it at the time plaintiff's husband was injured, the result could not have been avoided. There can be no doubt that the judgment of the Supreme Court, in Purcell v. Tennent Shoe Co., 187 Mo. 276, 86 S. W. 121, goes to the effect that the ordinance counted upon here may be sufficiently complied with by the owner of the elevator keeping a competent operator over sixteen years of age specially charged with the duty of operating the elevator on the separate floors of a building. So much and no more is pointedly determined in the case cited, for there it appeared the proprietor had a stock man over sixteen years of age who was a competent person within the sense of the ordinance, specially charged with the duty of running the elevator for persons on his particular floor. The court declared such to be sufficient. Though the judgment in that case essentially concludes that the ordinance does not require a competent operator to be at all times on the elevator, it does not determine that defendant should not keep a competent person specially charged with operating the elevator on the first and

every floor of the building so as to be available to one
desiring to employ the elevator.   Had an operator
been on the first floor, no doubt plaintiff's husband
would have called him to manage the car.   Here,
defendant made no effort whatever to comply with
the ordinance, for it did not keep a competent man
specially charged with the duty of operating the ele-
vator on different floors as in the case relied upon.
Indeed, no one whatever was given charge of the ele-
vator by defendant but instead every employee in
the two buildings, the one occupied in manufacturing
morphine and the other in manufacturing cocaine,
was permitted to operate it as he chose to do.   Though
Mr. Tompkins, the employee who started the ele-
vator on the third floor and occasioned the injury and
subsequent death of plaintiff's husband, acted with
due care on his part, it may be that, had defendant
kept a competent operator on the third floor and an-
other on the first floor, the one available to Mr. Tomp-
kins at his invitation and the other available to plain-
tiff's husband at his invitation, the tragedy would not
have occurred, for the conflict in the use of the ele-
vator which resulted in crushing Mr. Dunlap so that
his death ensued might have been avoided by trained
and experienced operators.   As said by the Supreme
Court of Illinois, among other duties of one competent
to be given in charge of an elevator is that of taking
proper precaution for the safety of those known to be
near the elevator opening, before moving it.   In this
view, it is a question for the jury as to whether or not
defendant's failure to observe the ordinance as sug-
gested operated proximately to occasion the death of
plaintiff's husband.   [Channon Co. v. Hahn, 189 Ill.
28.]

But it is argued, as defendant had posted notices
about the building that the elevator on which plaintiff's
husband came to his death was not to be used except
for the carriage of freight, decedent should be declared

guilty of negligence as a matter of law for failing to observe such rule, of which it is shown he had notice. All of the evidence goes to show that the elevator was constantly used by the employees for the purpose of a passenger conveyance. It is shown that plaintiff's husband had used it many times before and that his superior officer, Dr. Lamar, the superintendent of the two departments, both morphine and cocaine, constantly did the same. Indeed, the proof is quite conclusive that defendant's superior officers permitted all of the employees to use the elevator for passenger purposes and made no objection thereto whatever. In such circumstances, the rule forbidding its use except for freight must be regarded as waived by defendant, and to avail nothing on the plea of contributory negligence. [Francis v. K. C., St. J., etc., R. Co., 127 Mo. 658, 28 S. W. 842, 30 S. W. 129; Barry v. Hannibal & St. J. R. Co., 98 Mo. 62, 11 S. W. 308.]

It is argued that as the evidence shows Mr. Thompkins approached the shaft on the third floor of the building and rang the elevator bell about the same time plaintiff's husband entered it on the first floor, if not an instant before, the decedent should be declared guilty of contributory negligence as a matter of law for having undertaken to go upon a moving elevator. No one saw Mr. Dunlap go into the elevator and it cannot be affirmed that he did so while the elevator was moving, though the proof affords a strong inference to that effect. There can be no doubt that he had a right to go into the elevator to be conveyed to his office on the second floor, for such is shown to be a usual custom among the employees. But the law cast upon him the duty to exercise ordinary care in so doing. It may be that Tompkins started the elevator at the very time plaintiff's husband was stepping therein, thus precipitating him forward in such a position as to occasion his injury as the elevator arose. It does not appear conclusively that plaintiff's

husband went into the elevator after it started, though such may be inferred; while, on the contrary, the proof affords an inference suggesting that he may have entered the elevator simultaneously with its start to ascend, which was after the ringing of the bell. If the fact be so, no negligence which may be declared as a matter of law obtains as to his conduct.

It is true there is evidence to the effect that one of the employees heard the signal bell sound while decedent was about twenty feet away but approaching the elevator.   On this, it is especially urged we should declare him negligent as a matter of law, for it is said he must have entered the carriage when it was in motion.   We do not accept the argument as a sound one, for though the signal bell was then sounded, no one said, or can say, the elevator started before Dunlap entered it.   As we understand it, several signal bells were sounded about that time and decedent might have covered the space of twenty feet to the elevator during the interval before it started, as he is shown to have been young and alert.   We repeat, it may be he entered the carriage simultaneously with, and at the instant of, its first movement, in which event he should not be declared negligent as a matter of law, for men of ordinary prudence frequently do the same. Of course, in the absence of proof to the contrary, the law indulges a presumption to the effect that plaintiff's husband conducted himself at the time of entering the elevator in accordance with the precepts of ordinary care for his safety.   [Buesching v. Gaslight Co., 73 Mo. 219; Johnston v. St.  L. & S.  F.  R.  Co., 150 Mo. App. 304, 130 S. W. 413.]   In view of this presumption and different inferences which the evidence affords touching the matter of the negligence, if any, of decedent, that question was one for the jury.

While plaintiff's husband was yet pinioned in the elevator and during an interval of consciousness, Dr. Lamar, defendant's superintendent, made some in-

quiry as to how he became fastened therein. Dr. Lamar testified that plaintiff's husband said, "How foolish we are at times. I am to blame. I got on the elevator when it was in motion." Defendant argues that we should accept this statement of Dr. Lamar as conclusive on the question of the contributory negligence of decedent, but we are not so persuaded. It was shown by Dr. Lamar himself that he had no distinct recollection whatever as to the statement above made and that he only recalled it while testifying in the case upon his memory being refreshed by a statement he had made to an insurance adjuster a few weeks after the injury. It was shown, furthermore, that though Dr. Lamar testified before the coroner's jury on the day after the occurrence, no such statement whatever as that above set forth was referred to by him. Though Dr. Lamar was introduced as a witness by plaintiff and though it is competent for the court to declare the negligence of the injured party as a matter of law when it appears, without any conflict in the evidence, from plaintiff's case, as is determined in Church v. C. & A. R. Co., 119 Mo. 203, 23 S. W. 1056, we entertain no doubt whatever that the question here was one for the jury; for while, by placing Dr. Lamar on the stand, plaintiff vouched for his credit as a witness so as to preclude her right of direct impeachment, she is not conclusively bound by his testimony as to every detail and at all events. [Bensberg v. Harris, 46 Mo. App. 404, 407; Coulter v. Am. Merchants' Union Express Co., 56 N. Y. 585.] Especially is this true in the circumstances above set forth, for besides being in defendant's employ, it appears the witness was not clear on the matter, and he omitted to mention it before the coroner the day after the injury occurred. Furthermore, the mental condition of Mr. Dunlap at the time he made the statement, immediately after being so severely crushed in the elevator, was an element invoking the judgment of

the jury. When these matters are considered, we believe the court did not err in refusing to direct a verdict for defendant on this score, and very properly referred the matter of contributory negligence to the jury, and we believe, too, the jury was amply justified in rejecting the evidence of Dr. Lamar concerning the ante-mortem statement of decedent. The question of contributory negligence is always one for the jury where the facts are in dispute or where the facts, though undisputed, are such as may reasonably lead the minds of sensible men to different conclusions. [Church v. C. & A. R. Co., 119 Mo. 203, 214, 23 S. W. 1056.] The judgment should be affirmed. It is so ordered. *Reynolds, P. J.*, and *Caulfield, J.*, concur.