# THOMAS P. PURCELL, By Next Friend, Appellant, v. TENNENT SHOE COMPANY.

## Division One, March 15, 1905.

1. **Master and Servant: Safe Appliances.** It is the duty of the master to furnish the servant with a reasonably safe place in which to work and reasonably safe appliances with which to work. He is not compelled to furnish absolutely safe appliances.

2. ——: ——: **Elevator: Automatic Gates: Assumption of Risks.** An employee whose duty was to sweep the false floors in an elevator, and who was caught by the projecting prongs of the false floor as the elevator went up, can not complain that the gates in the elevator shaft were not arranged so as to close automatically, if the want of such automatic appliances was apparent and obvious to every one who saw the gate, and plaintiff did see and knew it was open, and remained within two inches of it when there was a safe place further back, the construction being not itself unsafe; but in such case if the servant was injured, he assumed the risk incident to its use when he entered the master's employment.

3. ——: **Elevator: Negligence: Necessary Proof: Bell.** The plaintiff was injured by being struck by the projecting prongs in the false floor of a freight elevator, which was well constructed, according to customary plans. The rules of the company required bells to be rung when the elevator started, and these bells could be heard on every floor for more than twenty feet from the elevator shaft, but on this occasion they were not rung, nor was any one on the elevator, but as it came by plaintiff, who was working within two inches of the gate, he was caught by a projecting prong and injured. *Held*, that if the elevator was started by the master or a vice-principal, the master was liable; if by a fellow-servant, he was not liable. But there being an entire absence of proof as to who caused the elevator to start, he can not recover, for that would leave it to the jury to conjecture who caused it to start.

4. ——: ——: **Ordinance: Competent Persons.** Where the ordinance requires the owner of a building to employ a competent person to run the elevator therein, the employment of more than one competent person to run it is not in violation of the ordinance.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*H. Chouteau Dyer* for appellant.

(1)   The failure of appellant to prove by positive evidence who it was started the elevator and continued it in operation up to the time it injured appellant, was not fatal to appellant's prima facie case.   Ordering Purcell to perform the task of sweeping off the false floor and failing to provide proper control of the freight elevator, filled the gap and connected respondent's negligence with the accident as the proximate cause of the injury.   Schultz v. Moon, 33 Mo. App. 339; Minster v. Railroad, 53 Mo. App. 282; Buesching v. Gas Light Co., 73 Mo. 219; Gannon v. Gas Light Co., 145 Mo. 502; White v. Railroad, 144 Mass. 404; Walsh v. Railroad, 102 Mo. 588.   (2)   Under the pleadings and evidence it became a matter of defense whether or not the elevator was started and continued in operation by a fellow-servant of defendant after it was shown by appellant that others than fellow-servants of appellant were continually using this elevator.   Bjorman v. Fort Bragg Redwood Co., 104 Cal. 626; Ritts' Admrx. v. Railroad, 4 S. W. 796; Railroad v. Oyster, 78 N. W. 359; Patterson v. Railroad, 40 S. W. 442.   (3)   Where one man is injured by another, both being in the employment of the one master, and nothing further appearing, the presumption of fellow-servants will arise; but this is far from holding that when an injury occurs and others than fellow-servants are shown to be continually doing the very thing, using the freight elevator, the presumption must follow that it was the fellow-servant, and not a vice-principal, who was guilty of the negligence resulting in the injury.   Whatever presumption there was, was one of fact and as such was within

the province of the jury. Erhart v. Dietrich, 118 Mo. 430; Burkholder v. Henderson, 78 Mo. App. 295; Hartvig v. N. P. L. Co., 19 Ore. 522. (4) From all the evidence introduced the inference could clearly have been drawn that the failure of respondent to have an employee in charge of its elevator was the proximate cause of appellant's injury. Kottleman v. Fire Assn., 79 Mo. App. 452. (5) For the purpose of determining whether the case should have been submitted to the jury, the testimony on the part of the appellant should be taken as true, and every reasonable inference therefrom in appellant's favor should be made. Harris v. Railroad, 89 Mo. 233; Frich v. Railroad, 75 Mo. 595; Buesching v. Gas Light Co., 73 Mo. 219. (6) It was for the jury and not the court to determine, under all the facts in the case, whether the appellant, a minor, even though nineteen years of age, was fully informed of the danger and risk incident to the work he was ordered to do. Steiler v. Hart, 65 Mich. 644; Beard v. American Car Co., 63 Mo. App. 382; Swadley v. Railroad, 118 Mo. 268; Jones v. Florence Milling Co., 66 Wis. 268; Herhn v. Railroad, 92 Mo. 440; Davis v. Railroad (Ark.), 7 L. R. A. 283; Nadnu v. Lumber Co., 76 Wis. 120; Rummel v. Dillworth, Porter & Co., 131 Pa. St. 509. (7) Although the elevator and its attendant parts may have been of good construction, and eminently proper for the service it was to perform, still, if the injury happening to appellant was caused not by defective machinery, but by a defective system of using this machinery, respondent must be held liable. Schroeder v. Railroad, 108 Mo. 328. (8) There was no evidence that the work of sweeping off the false floor was dangerous in the extreme. It had been accomplished by appellant on at least two former occasions. The task was not of such a nature that it became his duty to refuse to perform it or else assume the risk of an injury that might result. Stephens v. Railroad, 96

Mo. 212. In assuming the position near the edge of the shaft for the purpose of sweeping the false floor, appellant had the right to assume that he would not be put in danger by an act of the respondent over which he had no control. Mills v. Railroad, 44 Mo. App. 68; Musick v. Dodd Packing Co., 58 Mo. App. 323. (9) Although appellant may have known the manner in which the freight elevator in respondent's building was operated, and may have known that there was no one employed solely to operate it, still he will not be precluded from recovery if, at the time of the injury, he was engaged in the performance of a duty imposed on him, and was exercising ordinary care in the performance of the same. Madison v. Railroad, 60 Mo. App. 599; Smith v. St Joseph, 45 Mo. 449; Loener v. Sedalia, 77 Mo. 444; Maus v. Springfield, 101 Mo. 613. (10) The section of the ordinance of the city of St. Louis, offered in evidence, requires users of power elevators to employ a competent person to operate and run the same. This respondent failed to do, and failure to have a competent person in charge of the elevator at the time of the injury to the appellant substantially and directly contributed to the happening of the injury. This section of the city ordinance was binding on respondent, and as such was competent to show negligence on its part. Wendler v. House Furnishing Co., 165 Mo. 527; Schlereth v. Railroad, 96 Mo. 575; Hirst v. Real Estate Co., 169 Mo. 194. (11) Assuming that the elevator was started and kept in motion at the time of the injury to appellant by a fellow-servant of his, the failure of respondent to have some competent person in control of it at that time clearly contributed to the injury, and where an injury happens through the combined negligence of the master and a fellow-servant, the master is liable. Dewesse v. Iron Co., 54 Mo. App. 476, affirmed, 128 Mo. 423; Young v. Iron Co., 103 Mo. 324; Browning v. Railroad, 124 Mo. 55.

*Seddon & Holland* for respondent.

(1)   The court did not err in giving the peremptory instruction to the jury, because there was no evidence to sustain any of the allegations of negligence set out in plaintiff's petition.   Minnier v. Railroad, 167 Mo. 99; Railroad v. Charless, 162 U. S. 360; Shaw v. Bambrick-Bates (St. L. Ct. of Appeals), 77 S. W. 96; Hoke v. Railroad, 88 Mo. 368; Garland v. Railroad, 85 Mo. App. 584;   Blessing v. Railroad, 77 Mo. 410; McGowan v. Railroad, 61 Mo. 528; Sheehan v. Prosses, 55 Mo. App. 574; Railroad v. Baugh, 149 U. S. 384; Baulch v. Haas, 20 C. C. A. 156; Epperson v. Tel. Co., 50 S. W. 796; Pierce v. Kile, 26 C. C. A. 291; Smith v. Bank, 99 Mass. 605; Sorrenson v. Paper Co., 56 Wis. 338; Searles v. Railroad, 101 N. Y. 661; Taylor v. City of Yonkers, 105 N. Y. 202; Bailey on Master and Servant (1897), pars. 1659 and 1660.   (2)   The court did not err in excluding the city ordinance offered in evidence because there was no evidence that the injuries complained of were due to the violation of said ordinance alleged in the petition, or to any other violation thereof.

MARSHALL, J.—This is an action for ten thousand dollars damages for personal injuries, received by the plaintiff on April 23, 1900, while in the discharge of his duty as a servant  of the defendant.   At the close of the plaintiff's case, the trial court sustained a demurrer to the evidence, the plaintiff stood on the ruling,  a verdict was rendered for the defendant, and the plaintiff appealed.

This petition alleges that the defendant corporation occupies, and does business in, a five-story building, numbered 823 and 825 Washington avenue, in St. Louis, in which it maintains and operates a freight elevator, operated by hydraulic power, and which is started or stopped by a rope or cable fastened to a

valve in the cellar and extending up the elevator shaft; that the elevator shaft has a lattice guard or railing around it, on each floor, with a gate thereto which lifts up and works like a window on weights, remaining at the height to which it is raised; that the plaintiff was an employee of the defendant as porter or minor clerk and it was his duty to sort shoe samples, run errands and sweep the floors, including the false floors over the elevator shaft on the several floors.

The specific negligence of the defendant charged is, first, that the elevator was defectively and dangerously constructed and operated, in this, that the gates did not close automatically, but would remain in the position to which they were raised, and that defendant habitually and commonly permitted the gates to remain open and the shaft ungarded when the elevator was not on the level with the floor, and that there were strong iron hooks or plates attached to and projecting outwardly two inches from the floor of the elevator, which passed through narrow grooves cut in the several floors, so that when the gates were open and the elevator passed by the open gate, there was no guard to protect persons standing on the floor of the building and near such opening, from being caught by such projecting hooks or plates and being carried upward against the bottom of the open gate; second, that the defendant permitted any person in the building to run the elevator, and without any warning that it was to be moved; third, that there is an ordinance of the city of St. Louis that requires users of all power elevators to employ a competent person aged not less than sixteen years to run them, and that defendant failed to employ such a competent person to run its elevator, but permitted divers of its employees who were unskilled in running elevators to run the same.

The petition then alleges that while plaintiff was in the discharge of his duty and was sweeping the false floor or covering over the elevator shaft on the

second floor of the building and while the gate thereto was raised and open, the defendant caused the elevator to start upward at a high rate of speed, whereby plaintiff's leg was caught by one of said hooks or plates, and he was carried upward six or eight feet, and his head struck against the bottom of the gate, inflicting great injury upon him.

The answer is a general denial, a plea of contributory negligence, and a plea of assumption of risk.

The case made by the plaintiff is this:

The plaintiff was nineteen years of age, and had been in the employ of the defendant as a porter or minor clerk for about ten days; his duties chiefly were to help to load and unload the freight elevator, and to sweep the building, including the covers on the elevator shaft. The defendant used the whole of the five story building. There were two elevators in the building, a passenger elevator and a freight elevator. Around the elevator shaft on each floor there was a fence or railing, with a gate which worked on weights so as to be lifted like a window. The freight elevator was run by hydraulic power, and was equipped with appliances for covering the shaft at each floor to prevent accidents. These appliances consisted of false floors, which were connected with the elevator and worked automatically. Thus: there were six such false floors above the top of the elevator and six below the bottom of the elevator. Those below the elevator worked on a system of ropes and weights, so that when the elevator was at the bottom of the shaft, they were all pressed down below the bottom of the elevator. As the elevator went on up, these would rise with the elevator, the lowest one to the height of the first floor only, where it would stop automatically and cover the opening of the shaft like a prolongation of the floor of the building; the next would rise to the height of the second floor and cover the opening in the shaft there, and so on to the top, the purpose

being that the opening to the shaft should be covered while the elevator was up. Those above the elevator worked thus: when the elevator was at the bottom, one of such false floors would cover the opening of the shaft at each floor. When the elevator went up, the top of the elevator would carry the false floor at the second floor on up with it, and so at each floor, and when the elevator got to the fifth floor, all of the false covers that covered the opening of the shaft when the elevator started up, would be at the top of the elevator, having been thus carried up by the elevator as it rose. As the elevator went down the topmost of these covers would stop automatically at the fifth floor and cover the shaft opening there, and so on, successively at each floor, so that when the elevator reached the bottom, each floor would have a covering over the shaft opening. To prevent the false floor at the top from coming all the way down, and to cause one to stop at the proper floor, they had iron prongs that extended out about two inches from the bottom of the false floor, and which prongs fitted into narrow grooves in the floor, thereby causing the top of the cover to be on a level with the floor. (The petition erroneously charged that these iron prongs extended out from the floor of the elevator, but the evidence shows they were attached to the floors of the false floors aforesaid.)

On the day of the accident the plaintiff was sweeping the second floor. In order to sweep the false floor or covering he stood close to the shaft and at the open gate and reached over to the false floor or cover. The gate was raised six or eight feet. While so engaged the elevator came up and shoved the false floor upward. One of the iron prongs aforesaid attached to the bottom of the false floor became entangled with the shoe or bottom of the trousers on plaintiff's left leg, and he was carried upward, so that his head and shoulder struck against the bottom of the raised gate, and he was in-

jured. There was no one on the elevator, and there is no evidence in the case to show who started it.

There were electric bells on each floor of the building at the elevator shaft. The defendant had promulgated and posted a system of signals to be employed in using the elevator, which required any one who desired to use the elevator to ring the bell once on the floor he was on and where he wanted the elevator to come. If the elevator was not in use, the reply would be two rings of the bell. If the elevator was in use, there would be no reply. On this occasion the bell was not rung at all. The bells could be heard on every floor by a person standing for from twenty-five to fifty feet from the elevator shaft. The defendant had a man whose sole duty it was to run the passenger elevator, but no one whose sole duty it was to run the freight elevator. There were several stockmen whose duty it was to run the freight elevator, together with their other duties. Several times the foreman used it and once or twice the engineer used it. The officers of the company had used the freight elevator when the passenger elevator was out of order. They did not operate it themselves, but always called one of the stockmen to run it. The elevator was started or stopped by simply pulling on the rope that was attached to the valve in the cellar. It had the usual speed of such elevators, and was running at the usual speed at the time of the accident. It was possible to stop it in two feet. There was no evidence that the elevator was out of repair. On the contrary, the testimony shows it was a first-class freight elevator, and that the construction and false floors were not only in good order, and conducive to safety, but that such appliances were universally used in connection with properly constructed freight elevators.

The plaintiff offered in evidence the city ordinance pleaded. The court excluded it, on the ground that there was no evidence showing that its violation was

the proximate cause of the accident, or that it had anything to do with the accident, and counsel for defendant supplement the reason for the ruling with the contention that there was no violation of the ordinance because the ordinance only requires that the elevator shall be run by a competent person, and that the defendant employed several competent persons to run it, and there is no evidence that the stockmen whose duty it was to run it were not perfectly competent to do so.

At the close of the plaintiff's case, the trial court sustained a demurrer to the evidence, a verdict for the defendant was returned by direction of the court, and the plaintiff appealed.

## I.

The relation of master and servant existed between the plaintiff and the defendant. The duty of the master to furnish the servant with a reasonably safe place and reasonably safe appliances in which and with which to work, and the correlative duties and liabilities of the master and servant, have so recently been fully considered and settled by this court, that it is only necessary to refer to those cases. [Fisher v. Lead Co., 156 Mo. 479; Minnier v. Railroad, 167 Mo. 1. c. 112; Holmes v. Brandenbaugh, 172 Mo. 53; Curtis v. McNair, 173 Mo. 270; Goransson v. Mfg. Co., 186 Mo. 300.]

The essence of the first ground of negligence charged is, that the defendant habitually permitted the gates to the railing around the elevator shaft to remain open or up, when the elevator was not on a level with the floor, and that the iron prongs which held the false bottoms in place was a dangerous construction, and that in consequence of the combination of the two conditions the plaintiff was caught by the iron prong and carried upward until his head struck the bottom of the open or raised gate.

The use of the false floors to cover the openings in

the elevator shaft when the elevator was not passing the floor, was so manifestly a safe precaution to prevent a person from falling into the elevator shaft, that the railing around the shaft, which would also perform a like purpose, was useful only to prevent anyone from going upon the false floor and being injured by the false floor being raised up and such person being thrown off or carried up. The gate in the railing was necessary to enable persons to enter the elevator. The allegation of the petition that the defendant permitted the gates to habitually remain open or raised, is wholly unsupported by any evidence in this case. The gate was open on this occasion, but there is no evidence as to who raised it, or how long it had been raised, or that defendant knew or by the exercise of ordinary care could have known that it was raised. The plaintiff knew it was open before the accident, for he stood at the gate opening and was reaching over to sweep the false floor. He had ample time to pull it down before the accident, or to stand at any other place and reach over the railing and sweep. Or he could have stood more than two inches away from the elevator shaft and swept, and the iron prongs could not have caught him. He knew all about the gates, the iron prongs, and the manner of running the elevator and of its construction, for he described it very accurately and remarkably clearly.

But the gist of his allegation in this respect seems to be that the gates were not arranged so as to close automatically. It may be true that such an arrangement would have been a safer method of operating them. But the same is true of windows, and a like contention might as reasonably be made by one who fell out of an open window. Moreover, the want of such automatic appliance for closing the gates, was open, apparent and obvious to the plaintiff or whoever looked at them or saw them raised, as plaintiff did before the accident, and therefore the risk incident thereto

was assumed by the plaintiff when he entered the employment.   A master is not obliged to furnish absolutely safe appliances.   This construction of such gates is not of itself unsafe, but on the contrary is usual for freight elevators.

It does not appear that the iron prongs that held the false floors in place were dangerous, or that there was any other or better or safer way of constructing such floors, and it is not even pretended that such false floors were not a proper appliance, and it is self-evident that the use of such appliances was conducive to safety.

The plaintiff, therefore, wholly failed to prove the first act of negligence pleaded.

The second act of negligence pleaded is, that the defendant permitted any one in the building to run the elevator, and that without any warning it was moved.

There is no evidence whatever in the record that the defendant permitted any one in the building to run the elevator.   On the contrary, the evidence discloses that there was a stockman on each floor whose duty it was to run the elevator, and that when the officers of the company used this elevator themselves, they always called one of the stockmen to run the elevator and did not attempt to run it themselves.   The evidence also shows that the foreman and engineer had run it once or twice or several times.   But there is no evidence that any other clerk, employee or person was ever authorized to run it or ever did run it.

It is true that the evidence shows that no bell was rung or warning given when the elevator was started up on this occasion.   But it was equally true that the defendant had promulgated and posted a rule requiring the bell to be rung before the elevator was started, and that the bell could be heard on every floor by a person standing within twenty-five feet of the elevator shaft, and that it was the usual custom to ring the bell as required.   There is no evidence to show who started

the elevator on this occasion. No one was on it. If it was started without warning, by the master or a vice-principal, the master would be liable; but otherwise, if it was started by a fellow-servant of the plaintiff. The burden of the proof was on the plaintiff to make out a case against the master, by showing that the accident was from a cause for which the master was liable. [Goransson v. Mfg. Co., 186 Mo. 300.] The court or jury would have no right to conjecture or guess that the accident occurred from a cause for which the master was liable, and neither would it be proper or right to guess that it arose from a cause for which the master was not liable. The law requires the facts to be proved by the party upon which the burden of proof rests. The plaintiff failed to adduce any proof of the necessary facts in this regard.

The third act of negligence charged is the ruling of the court in excluding the city ordinance which requires users of all power elevators to employ a competent person to run them.

The court excluded the ordinance because it did not have any place in the case made, and because even if the defendant had violated the ordinance in this respect, such failure was not the proximate cause of the injury and had nothing to do with it.

The evidence adduced shows that the defendant employed a stockman, over the age of sixteen years, on every floor, whose duty it was to run this elevator, and that they were all competent to do so, or at any rate there is no showing that they were incompetent.

The petition charges that the defendant did not employ a competent person to run the elevator, but permitted divers of its employees who were unskilled in running elevators, to run the same. The evidence fails to show that the stockmen, whose duty it ordinarily was to run it, or the foreman or engineer, who are shown to have run the elevator once or twice or several times, the exact times are not stated, were incompetent or

unskilled, but on the contrary it shows that they were experienced in doing so, for they had run it all the time while the defendant occupied the building.

Unless, therefore, the employment of more than one competent person to run the elevator was a violation of the city ordinance, and that the meaning of the ordinance is that only one person shall be permitted to run it and that he shall not perform any other service, there was no violation of the ordinance shown and hence the exclusion of the ordinance was not error.

Such a construction as that indicated does not suggest itself from the most critical reading of the ordinance, nor does it commend itself to the legal mind. For, in hotels, for instance, where the elevator runs substantially day and night, it would be physically impossible for one person to run it all the time. Necessarily more than one person would have to perform that duty. Of course only one would run it at a time. But the same is true of this elevator, and the system of bells in use by defendant was intended to prevent more than one person from attempting to use the elevator at the same time. Moreover, the accident in this case is not shown to have been, in anywise, attributable to a conflict in the attempted use of the elevator by the persons who were authorized to use it. The evidence simply shows that without any warning the elevator rose, and that there was no one on it. What caused it to start, or who started it, whether a vice-principal, or a fellow-servant, does not appear. The plaintiff, therefore, failed to make out a case of violation of the ordinance, and hence the exclusion of this ordinance cuts no figure in the case. The writer of this opinion, however, again registers his opinion that a city ordinance can not afford the foundation for a civil right of action between citizens *inter sese,* and also expresses his regret that he has, so far, been unable to make the majority of

this court see that this is logically and scientifically true.

Irrespective, therefore, of the question of the contributory negligence of the plaintiff in voluntarily placing himself in a position which he now claims was dangerous and which he must then have known was dangerous as well as he knows now, when he could just as easily have taken a position of safety from which he could have done the sweeping required just as effectually and easily, the evidence adduced wholly fails to sustain the negligence charged, and the trial court properly sustained the demurrer to the evidence.

The judgment is affirmed. All concur.