EMMETT BALDWIN, Respondent, v. HANLEY & KINSELLA COFFEE CO., Appellant.

St. Louis Court of Appeals.   Opinion Filed December 2, 1919.

1. **MASTER AND SERVANT: Safe Place To Work: Where Light is Necessary it Must be Provided.** Where artificial light is necessary to render safe the place where the servant is required to work, the failure of the master to exercise ordinary care to provide such light as will make the place a reasonably safe one is a breach of the master's duty, for which liability may be cast upon him.

2. **TRIAL PRACTICE: Demurrer to Evidence Admits Truth of Plaintiff's Evidence.** On demurrer to the evidence in an action for personal injuries, the evidence for plaintiff must be taken as true for the purposes of ruling on the demurrer.

3. **MASTER AND SERVANT: Contributory Negligence: Question for the Jury.** In an action by a servant for personal injuries caused by walking into an open, unlighted elevator shaft, the elevator having been removed, etc., evidence reviewed and *held* the question of plaintiff's contributory negligence was one for the jury.

4. **TRIAL PRACTICE: Demurrer to Evidence: Presumptions.** In passing upon a demurrer to the evidence, the evidence must be viewed in the light most favorable to the plaintiff, giving him the benefit of every inference favorable to him which may be fairly and reasonably drawn therefrom; and if that evidence is reasonably susceptible to two inferences, one supporting a right of recovery, and the other fatal thereto, leaving room for reasonable minds to differ with respect to the evidence in that regard, the case is one for the jury.

5. **MASTER AND SERVANT: Instructions: Instruction on Negligence Not Confusing.** In an action by a servant for personal injuries caused by walking into an open, unlighted elevator shaft, an instruction on the master's liability for negligence reviewed and *held* not so lengthy and awkward that it was confusing and as not being fatally bad.

6. ———: ———: **Instruction Submitting Violation of Ordinance as Proximate Cause Warranted.** In an action by a servant for personal injuries caused by walking into an open, unlighted elevator shaft, evidence of a violation by defendant of section 2097, chapter 28, Revised Code of the City of St. Louis, Ordinance No. 26653,

requiring all users of power elevators to employ a competent person to operate and run the same, etc., operating proximately to cause plaintiff's injury, *held* that an instruction submitting to the jury the matter of the violation of the ordinance was proper.

7. ———: Safe Place to Work: Evidence: Failure of Master Safely to Light Place of Work Admissible to Rebut Charge of Contributory Negligence. In an action by a servant for personal injuries caused by walking into an open, unlighted elevator shaft, testimony as to the light in the basement, and the effect thereof, was admissible under the allegations of the petition where defendant made the question of plaintiff's contributory negligence an issue in the case, and upon that issue such testimony had an important bearing.

8. APPELLATE PRACTICE: Assignments of Error in Excluding Testimony Not Touched Upon in Brief Not Considered. Assignments of error, in a general way, to the action of the court in excluding testimony where the particular rulings complained of are not shown nor is the matter touched upon in appellant's points and authorities, or argument in its brief, such assignments need not be noticed.

9. DAMAGES: Excessive Damages. A verdict for $5000 *held* not excessive where plaintiff at the time of receiving his injury was 23 years of age, in good physical condition and earning $9 per week, and the evidence shows that as a result of falling into the shaft his chin and lip were split, his nose and forehead cut open; that one tooth was knocked out and he sustained a fracture of the neck of the right femur, and that he was unconscious for several days and was confined in bed at a hospital for more than six weeks; that he was compelled to use crutches for about eight months, and that his right leg had become permanently shortened five-eights of an inch, and that at the time of the trial was still under the treatment of a physician, etc., and the use of his right leg was permanently impaired, and that he would be a cripple for life.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. William T. Jones,* Judge.

AFFIRMED.

*Clarence T. Case* and *Victor J. Miller* for appellant.

(1) The rule in Missouri is that where plaintiff has, by a negligent act on his part, directly contributed to his own injury, he may not recover, regardless of how his carelessness compares with the other contributing

causes of the injury. Newton v. Wabash Railroad Company, 152 Mo. App. 67; Burnett v. Railroad Company, 172 Mo. App. 51; Schmidt v. St. Louis Railroad Company, 149 Mo. 287; Rogers v. Packing Company, 185 Mo. App. 99; Bathe v. Stave Company, 199 Mo. App. 127; Neal v. Gillett, 23 Conn. 443. (2) One whose eyesight is impaired must use a degree of care beyond the usual and ordinary, proportionate to the degree of impairment of his vision. Karl v. Juniata County, 206 Pa. St. 633. (3) The ordinance relied on by the plaintiff in this case does not require that some operator must be in constant charge of and on guard at the elevator. Purcell v. Tennent Shoe Co., 187 Mo. 276. (4) The verdict is manifestly excessive. Winkleblack v. Great Western Manufacturing Company, 187 S. W. 95; Applegate v. Q, O. & K. C. Railroad Company, 252 Mo. 173; Brady v. Railroad, 206 Mo. 509; Kinney v. Metropolitan Street Railroad, 261 Mo. 97; Farrer v. Railroad, 249 Mo. 210; Lessenden v. Missouri Pacific Railroad Company, 238 Mo. 247.

*Taylor, Chasnoff & Willson* and *Wilfley, McIntyre, Nardin & Nelson* for respondent.

(1) It is the duty of an employer to exercise ordinary care to provide for his employees a reasonably safe place in which to work. Appellant violated this duty in three particulars. (a) In failing to provide lights. (b) In failing to comply with the city ordinance governing the operation of power elevators. (c) In failing to provide sufficient signals for the operation of the elevator. Yost v. Atlas Portland Cement Co., 191 Mo. App. 422; Dunlap v. Mallinckrodt Chemical Works, 159 Mo. App. 49; Channon Co. v. Hahn, 189 Ill. 28; De Late v. Loose-Wiles Biscuit Co., 213 S. W. 885. (2) In passing upon the demurrer to the evidence the evidence must be viewed in the light most favorable to plaintiff, giving him the benefit of every influence favorable to him which may be fairly and reasonably drawn therefrom. The questions of defendant's negligence and of plaintiff's

contributory negligence were properly submitted to the jury under this rule. Beckman v. Jewelry Co., 175 Mo. App. 279, 284; Jacobi v. Realty Co., 164 Pac. 394, L. R. A. 1917 E. 696; DeLate v. Loose-Wiles Biscuit Co., 213 S. W. 889; Aitken v. Sidney Steam Scraper Co., 198 S. W. 1139; Wendler v. Peoples H. F. Co., 165 Mo. 527; Channon Co. v. Hahn, 189 Ill. 28; Barfoot v. White Star Line, 170 Mich. 349; People's Bank v. Morgolofski, 75 Md. 432; Dawson v. Sloane, 49 N. Y. 304; Shoninger v. Mann, 219 Ill. 242. (3) Defendant failed to make an offer of proof in every instance where testimony offered by it was excluded by the court. There is, therefore, nothing before this court to review with respect to this testimony. The trial court cannot be convicted of error where no offer of proof is made. Holzemeyer v. Metropolitan St. Ry. Co., 261 Mo. 411; State v. Arnold, 206 Mo. 597; Louis v. Louis, 134 Mo. App. 566. (4) There was no error in permitting witness Crenshaw to testify that the basement lights, when lighted, illuminated the shaft and floor of the elevator room. This was clearly admissible under the pleadings and had already been established by the testimony of other witnesses, to which no objection had been made. Moore et al. v. McCutcheon et al., 190 S. W. 350; Roe v. City of Kansas, 100 Mo. 190; Insurance Co. v. Railroad, 171 Mo. App. 70-80; Fuller v. Robinson, 230 Mo. 22, 56; Lindsay v. Kansas City, 195 Mo. 181. (5) The verdict of $5000 is not excessive compensation for the injuries sustained by respondent. Bamber v. United Rys. Co., 196 S. W. 953; Dean v. Wabash Rd. Co., 229 Mo. 425; Washington-Virginia Co. v. Bouknight, 113 Va. 696; Mueller v. Washington Power Co., 106 Pac. 476; Boten v. Sheffield Ice Co., 180 Mo. App. 112.

ALLEN, J.—This is an action for personal injuries sustained by plaintiff while in the employ of the defendant corporation as its servant. The trial below resulted in a verdict and judgment for plaintiff in the sum of $5000, and the defendant prosecutes the appeal.

At the time of plaintiff's injury defendant conducted its business in a building situated on the north side of Spruce street in the City of St. Louis, facing to the south. The ground floor of this building contained a "general office," to which the main entrance to the building led. In the rear was an "L" shaped "elevator room," separated from the general office by partitions and by an enclosed elevator shaft. This elevator shaft faced west and opened into that part of the elevator room which extended farthest south; the rear end of that room extending entirely across the building. Immediately north of this building was another building containing, on the ground floor, defendant's warehouse which was separated from the elevator room by a brick wall common to the two buildings. Near the northeast corner of the elevator room a door led from that room into the storeroom. The arrangement of these rooms, and the location of the elevator shaft, etc., will more fully appear from the drawing appearing herewith. It seems that this drawing, prepared by appellant, was not the one introduced in evidence below, the latter having been lost, but it is conceded that it is substantially correct, and it suffices for our purposes.

*See drawing on opposite page

The main building was at least four stories in height and the elevator was a freight elevator, operated by the various employees of defendant in the course of its business; no special operator being at any time in charge thereof. When an employee on any one of the floors desired to use the elevator, and did not find it at that floor, the custom was to reach into the shaft and shake or "jangle" one of the cables, which made a noise that could be heard by one at or near the elevator. There is some controversy in the testimony as to how loud this noise was, but the evidence for plaintiff is to the effect that it could be heard only fifteen or twenty feet away. It is said that it could not be heard in the wareroom mentioned. An employee, upon any floor, desiring to use the elevator when it was at another floor, after shaking the cable and hearing no call or

ALLEY

2 Large Doors, 12 Lights 14½"x15" 4' above floor,
With Arched Window above doors

General Office

3-5 Electric Light Chandeliers
8' above floor.

Main Entrance to Building

SPRUCE ST.

Incline

Sliding Door

Store Room

Approximate Location of Boxes

Brick Wall

6 Windows above door, Z
305 Transoms
Floor to bottom
of Window 17'3½"

16'-9⅝"

14'

62'6"

4'

Elevator Room 17'4"

Electric Light
near ceiling

10'8¼"

9'1"

8'8½"

Elevator Shaft

Window in Partition

Telephone Booth

6'6"

3'4"

Electric Light 6' above
floor.

4 Windows 7'8½" above Floor
Ceiling 14' High
with Transoms

Wooden Partition

Electric Light
8' above Floor

Electric Light
8' above Floor

Electric Light
8' above floor.

10'

10'

9'

9'

10'

Down to Basement

Up

Up

Hall

16'6"

PLAN OF MAIN FLOOR

SCALE - 1"÷6'

12'6" to Basement floor, Elevator Pit 18" deep

Defendants Exhibit "A"

Measurements taken by Walter M. Williams.
Feb. 12, 1916.

warning from anyone, would pull the operating rope thus bringing the elevator to the floor upon which he stood. It is said that when the rope was pulled downward the elevator was caused to ascend and *vice versa*. It appears that defendant had previously installed a system by means of which a bell would be rung when the elevator was to be used, but that this device was out of order at the time of plaintiff's injury and had been so for a long time prior thereto.

Shortly prior to plaintiff's injury he was working upon the fourth floor of this building. He desired to get certain boxes from the storeroom north of the elevator room on the first floor, mentioned above. The evidence shows that he entered the elevator at the fourth floor and descended therewith to the first floor where he caused the elevator to stop; that he thereupon raised the elevator gate at this floor—a light wooden gate—and secured it in that position by means of a rope attached thereto which he fastened to a hook provided for that purpose. He thereupon proceeded across the elevator room to the door near the northeast corner thereof leading into the storeroom, and entered that room. The route which he took is approximately shown by the curved line on the annexed drawing. Having obtained two boxes, he retraced his steps to the entrance of the elevator shaft. The testimony for plaintiff shows that at that time no artificial light was burning in the elevator room, though electric lights were provided therein, one of which was situated near the entrance to the elevator shaft. Though perhaps some little light came through the glass portion of the partition between this room and the general office, the evidence shows that no light could enter the room from the outside of the building; that even upon bright days it was necessary to have artificial lights in order to discern objects with any clearness in this room; and that at the time of plaintiff's injury the room was dark. Plaintiff's evidence further tends to show that defendant had posted a sign not far from the elevator, in this elevator room,

notifying employees to turn off the lights there upon leaving the room.

The evidence further shows that this elevator shaft extended below the first floor to the basement, a distance of about twenty feet; that in the basement near the shaft was situated an electric light; and that defendant's rules required that this light in the basement be kept burning at all times. And the evidence, when viewed in the light most favorable to plaintiff, shows that it was customary to keep this light burning at all times, and that when burning it cast light upward through the elevator shaft, and that this illumination of the shaft was plainly discernable by anyone on the first floor when the elevator was not at that floor, but that when the elevator was at the first floor it hid from view the light thus cast into the shaft from the basement. While plaintiff was making this trip into the storeroom and returning therefrom—he says that he was gone but a brief interval, perhaps about one minute—a boy in defendant's employ, one Drodhage, then a lad not quite sixteen years of age, removed the elevator from the first floor. His testimony shows that he was upon an upper floor, and, desiring to use the elevator, he went to the elevator shaft, saw that the elevator was below him at the first floor, and shook or "jangled" the cable mentioned, as was the custom, and that hearing no response or warning, he pulled the operating cable and caused the elevator to ascend. When plaintiff returned from the wareroom to the elevator shaft, not having heard the "jangling" of the cable—which, it may be inferred occurred while he was in the wareroom—and being in ignorance of the fact that the elevator had been removed from the first floor, he walked into the shaft, supposing that he was stepping upon the elevator, and relying, in part at least, upon the fact that in the absence of the elevator the shaft would be lighted by the basement light mentioned above, which would indicate that the elevator had been removed. Plaintiff fell to the bottom of the shaft, sustaining serious injuries.

The petition charges negligence on the part of defendant in failing to exercise ordinary care to provide lights ''sufficient to render the said first floor· a safe place to work.''

The petition further sets up that there was in force and effect in the City of St. Louis a certain ordinance, being Section 2097 of Chapter 28 of the Revised Code of St. Louis, Ordinance No. 26653, requiring all users of power elevators to employ a competent person to operate and run the same who shall have a proper knowledge of all parts of the machinery and the working of the elevator of which he may have charge, and who shall not be less than sixteen years of age, industrious and of sober habits. And it is charged that defendant failed to comply with this ordinance in that defendant failed to employ a competent person to operate the elevator in question, either on the first or any other floor of the building, but instructed all of its employees to operate the elevator whenever the same was necessary in the performance of their duties; that none of said employees were competent persons to operate the elevator; and that because of said violation of the ordinance by defendant the elevator was run and operated in a dangerous manner, which rendered the first floor of the building an unsafe place to work.

And it is alleged that the method of operating the gates at the elevator shaft was dangerous and unsafe, and rendered the said first floor an unsafe place to work.

It is further charged that the manner of operating the elevator, by allowing any employee upon any floor to pull the operating cable, was a negligent method; that defendant was negligent in failing to exercise ordinary care to provide signals to indicate when the elevator was about to be used by an employee, and negligent in failing to instruct its servants to give any signal of the removal of the elevator sufficient to serve as a warning to such other servants of defendants as might then be at work upon the first floor; and that such method of opera-

tion of the elevator was unsafe and dangerous and rendered the first floor an unsafe place to work.

The answer is a general denial coupled with a plea of contributory negligence.

The ordinance pleaded in the petition was introduced in evidence.

Some further features of the evidence will be referred to in the course of the opinion.

## I.

It is insisted by learned counsel for appellant that the trial court erred in refusing to give a peremptory instruction, in the nature of a demurrer to the evidence, offered by the defendant at the close of plaintiff's case and again at the close of the entire case.

The argument upon this assignment of error appears to proceed upon the theory that the evidence was such as to convict plaintiff of contributory negligence as a matter of law barring a right of recovery. It does not appear to be seriously contended, if at all, that no negligence was shown on the part of defendant constituting a breach of the duty owing by defendant to plaintiff as its servant; and indeed there is no room for such contention. Apart from all other features of the case, we regard it as clear that a negligent breach of defendant's duty appears in failing to exercise ordinary care with respect to lighting the first floor, at or about the elevator shaft, in a manner such as to afford sufficient light to render this portion of the premises a reasonably safe place for the performance of plaintiff's said duties; particularly in view of the manner in which defendant conducted its business with respect to the operation of this elevator. Though it appears that electric lights were provided there, the evidence is that they were not kept burning and were not burning on the occasion herein question; but that on the contrary the room and the elevator shaft were both so dark that one could by no means readily discern that the elevator had been removed from the first floor.

In Yost v. Atlas Portland Cement Co., 191 Mo. App. 422, 177 S. W. 690, we held that the master was liable for a failure to exercise ordinary care to see that the place where the plaintiff was required to work was so lighted at night as to make it a reasonably safe place for plaintiff to pass over in the performance of his duties. The authorities there cited, we think, amply support the conclusion that where, as here, artificial light is necessary to render safe the place where the servant is required to work, the failure of the master to exercise ordinary care to provide such light as will make the place a reasonably safe one, is a breach of the master's duty for which liability may be cast upon him.

In the case before us not only does it appear from plaintiff's evidence that no lights were burning in this elevator room, where, without the aid of such lights, darkness or semi-darkness prevailed, but that the basement light which, according to plaintiff's evidence, was customarily kept burning at all times, and which, if burning, would cast light upward into the elevator shaft and thus enable one to tell whether or not the elevator had been removed from the first floor, was not lighted upon this occasion. This is abundantly supported by the evidence and must be taken as true for the purposes of the ruling on the demurrer.

We are also inclined to the view that the method adopted by defendant for operating this elevator, including therewith the method of signalling, was, upon the whole, a negligent method; and further that there was a violation of the ordinance pleaded. The latter, i. e. the question as to the violation of the ordinance, will be considered in passing upon the assignment of error relating to the giving of plaintiff's main instruction.

And a careful perusal of all of the testimony contained in the record touching the matter has convinced us that the question of plaintiff's contributory negligence was one for the jury. It is true that plaintiff left this elevator at the first floor with the gate up, i. e. suspended

by a rope fastened to a hook provided for that purpose, and went across the elevator room and into the store-room and returned within a brief interval, during which the elevator had been removed, and walked into the open elevator shaft. But, under all of the circumstances present, we think that it cannot be held, as a conclusion of law, that plaintiff failed to exercise ordinary care for his own safety. It is argued that plaintiff knew the custom with respect to the operation of this elevator, and that another employee upon an upper floor might remove the elevator, after jangling the cable, which plaintiff could not or might not hear in the wareroom, and that therefore plaintiff was negligent, as a matter of law, in not taking further precautions to ascertain that the elevator had not been so removed before step-ping into the elevator shaft. But though it be true that plaintiff had knowledge of this method of operating the elevator, his failure to discern that the elevator had been removed, under the circumstances present, ought not to operate to convict him of negligence, as a conclusion of law, especially in view of the fact that it appears that he had been led to rely, in some measure at least, upon the basement light to indicate the absence of the elevator from that floor. We think that the ques-tion as to whether a reasonably prudent man would have acted otherwise than did plaintiff was one for the determination of the jury. The evidence is that one descending from any upper floor to the first floor in the elevator would not see any illumination from this base-ment light, if lighted, by reason of the fact that the elevator shut off the light coming therefrom. Conse-quently when plaintiff descended in the elevator and stopped the same at the first floor, the fact that the light in the basement was not burning could not be observed by him. Touching the effect of the basement light, when burning, plaintiff, on cross-examination of appellant's counsel said: "But I will tell you about it being a careless thing to do. I didn't feel I was only to be gone a minute and even if the elevator was gone

there was supposed to be a light coming out of the basement, and you could see the elevator was gone.''

And as to the electric lights on the first floor, plaintiff testified that he did not know where the ''switch'' was for turning them on.

An argument by appellant is predicated upon the fact that the evidence shows that plaintiff was blind in his left eye; it being argued that the lack of sight in that eye had much to do with bringing about plaintiff's injury, and that plaintiff was required to exercise a higher degree of care because of this fact than he otherwise would. Upon cross-examination of plaintiff it was sought to make it appear that he turned the corner of the elevator shaft, at his left, and stepped into the door thereof without turning so as to be able to see into the shaft with his right eye; but this cross-examination failed to disclose that the accident happened in such manner. Upon the facts as testified to by plaintiff we think that the fact that plaintiff had not the use of his left eye is not a material factor in determining the question of his contributory negligence in passing upon the demurrer.

It is a familiar rule of law that in passing upon a demurrer to the evidence, the evidence must be viewed in the light most favorable to the plaintiff, giving him the benefit of every inference favorable to him which may be fairly and reasonably drawn therefrom; and that if the evidence is reasonably susceptible of two inferences, one supporting a right of recovery and the other fatal thereto, leaving room for reasonable minds to differ with respect to the effect of the evidence in that regard, the case is one for the jury. [See Beckman v. Jewelry Co., 175 Mo. App. 279, 157 S. W. 855, and cases cited; Yost v. Atlas Portland Cement Co., supra, and cases cited.] So viewing the evidence in the record before us, we think that the demurrer was well ruled.

## II.

Plaintiff's first and main instruction is assailed. Because of the attacks made upon it, we here set out the instruction in full, as follows:

"The court instructs the jury that if you find and believe from the evidence that on or about the 10th day of October, A. D. 1913, the defendant was engaged in business in St. Louis, Missouri, and maintained and carried on its business in a certain warehouse building at 715 Spruce street in said city and State; that plaintiff was engaged in said building as the employee of defendant; that defendant used, operated and controlled in its business in the building above referred to a certain electric power elevator in a certain elevator shaft; that said shaft extended from the basement of said building up through the first floor to the upper floors of said building; that defendant failed to exercise ordinary care to provide light for said first floor sufficient to render the same a reasonably safe place in which to work, and failed to employ and maintain in charge of the operation of said elevator on said first floor a competent person who had the proper knowledge of all the parts of the machinery for the working of said elevator, but instructed its various servants and agents in said building to operate and run said elevator in the course of their work in and about said building, and that these servants were not competent persons for operating said elevator, as above set out, and did not have a proper knowledge of the machinery for the working of the same; and that defendant was aware thereof

"And if you further find that defendant provided for said elevator shaft on said first floor a certain gate and provided also a rope and hook whereby said gate might be raised and left suspended, and instructed its servants and agents that when they were upon the upper floors of said building and desired to use said elevator in the course of their work and found said elevator then at some lower floor, they should pull the cable of said elevator and thus draw the same up to the floor where they then stood; and that defendant negligently and carelessly failed to provide any signal reasonably sufficient to give warning of the removal of said elevator

to other servants of defendant who might be using said elevator on some other floor.

"And if you further find and believe from the evidence that on the 10th day of October, A. D. 1913, plaintiff in due course of his employment ran said elevator from the fourth floor to the first floor of said building, raised and suspended said gate on said hook and walked from the elevator into the north room of said first floor for the purpose of carrying certain freight from said first floor to said fourth floor by means of said elevator; that while he was so engaged, if you so believe, the said servants and agents of defendant, in accordance with defendant's directions, as aforesaid, if you find they were so directed, raised said elevator from said first floor to one of said upper floors; that on account thereof the said elevator shaft at said first floor remained open and unguarded; and that by reason of the failure of defendant to exercise ordinary care to provide a signal (if you find such to be the fact) or to instruct its servants and agents in such cases to give a signal sufficient to warn plaintiff of the removal of said elevator, if you so find, defendant's servants and agents failed to give plaintiff a sufficient warning of the removal of said elevator; that plaintiff thereafter returned to said elevator shaft and because of the aforesaid carelessness and negligence in the respects aforesaid, and as a direct result thereof, plaintiff was caused to fall from said first floor into said elevator shaft and to strike the floor of said basement, and that as a direct result thereof and while he was in the exercise of ordinary care for his own safety, he was injured, then your verdict will be for the plaintiff."

It is said that the instruction, as a whole, is "so lengthy and awkward that it is exceedingly confusing." We do not think that the instruction could properly be condemned on this score—certainly not as being fatally bad.

It is said that there was no evidence of a violation of the ordinance, and that hence it was reversible error to submit that question by this instruction. It is argued that to comply with the ordinance it was not necessary to have an operator constantly in charge of the elevator, but that any number of competent persons might lawfully operate it, citing Purcell v. Tennent Shoe Co., 187 Mo. 276, 86 S. W. 121; and that it was not shown that any of defendant's employees who operated the elevator were incompetent, or that the incompetency of any operator was the proximate cause of plaintiff's injury.

It is true that in the Purcell case, supra, it was held that the defendant had there sufficiently complied with the ordinance by having a "stockman" on each floor, of the prescribed age and competent therefor (there being no showing of incompetency), specially charged with the duty of operating the elevator. But in Dunlap v. Chemical Works, 159 Mo. App. 49, l. c. 58, 59, 139 S. W. 828, this court, in construing the opinion in the Purcell case, held, and properly so we think, that the decision in the Purcell case did not determine that a defendant proprietor was not required by the ordinance to "keep a competent person specially charged with operating the elevator on the first and every floor of the building so as to be available to one desiring to employ the elevator." Further speaking of that subject, this court in the Dunlap case, through NORTONI, J., said:

"Here, defendant made no effort whatever to comply with the ordinance, for it did not keep a competent man specially charged with the duty of operating the elevator on different floors as in the case relied upon. Indeed, no one whatever was given charge of the elevator by defendant but instead every employee in the two buildings, the one occupied in manufacturing morphine and the other in manufacturing cocaine, was permitted to operate it as he chose to do. Though Mr. Tompkins, the employee who started the elevator on the third floor and occasioned the injury and subsequent death of plaintiff's husband, acted with due care on his part,

it may be that, had defendant kept a competent operator on the third floor and another on the first floor, the one available to Mr. Tompkins at his invitation and the other available to plaintiff's husband at his invitation, the tragedy would not have occurred, for the conflict in the use of the elevator which resulted in crushing Mr. Dunlap so that his death ensued might have been avoided by trained and experienced operators. As said by the Supreme Court of Illinois, among other duties of one competent to be given in charge of an elevator is that of taking proper precaution for the safety of those known to be near the elevator opening, before moving it. In this view, it is a question for the jury as to whether or not defendant's failure to observe the ordinance as suggested operated proximately to occasion the death of plaintiff's husband. [Channon Co. v. Hahn, 189 Ill. 28.]''

We are of the opinion that there was here evidence of a violation of the ordinance, operating proximately to cause plaintiff's injury, and that the matter was properly submitted by this instruction.

## III.

There was no error in admitting, over defendant's objections, testimony as to the light in the basement and the effect thereof. Appellant says that the petition specifically charged that the first floor was the place that was unsafe, and that this testimony was foreign to the issues. The point is not well taken. The petition charged ''that the defendant failed to exercise ordinary care to provide lights sufficient to render the said first floor a safe place in which to work.'' The testimony as to the basement light was, under the circumstances appearing in evidence, admissible under this allegation of the petition. Furthermore, defendant made the question of plaintiff's contributory negligence an issue in the case, and upon that issue the testimony as to the light in the basement had an important bearing.

## IV.

In its assignments of error appellant assigns error, in a general way, to the action of the court in excluding testimony offered by it. The particular rulings complained of are not shown, nor is the matter touched upon in appellant's points and authorities or argument in its brief. It need not, therefore, be further noticed.

## V.

Finally it is argued that the verdict of $5000 is excessive.

At the time of plaintiff's injury, to-wit, October 10, 1913, he was twenty-three years of age and was earning about nine dollars per week,. and the evidence is that prior thereto he was in good physical condition. The evidence shows that as a result of falling into this shaft, plaintiff's chin and lip were split, his nose and forehead cut open; that one tooth was knocked out, and that he sustained fracture of the neck of the right femur. The evidence further shows that he was unconscious for several days, and was confined in bed at a hospital for more than six weeks, that about a week after his removal from the hospital he was able to get about upon crutches; that he was compelled to use crutches for about eight months, after which time he used a cane. At the time of the trial, nearly two and one-half years after the time of his injury, he was still using a cane, and testified that if he undertook to walk during the day he was unable to sleep at night because of the pain in his back and leg. His right leg had become permanently shortened five-eights of an inch. Subsequently to his injury and prior to the trial below he had been able to work, according to his testimony, but a few hours a day at intervals and had earned not to exceed $150 in that time. At the time of the trial he was still under the treatment of a physician whose bill for services then amounted to $150, and who was then treating plaintiff three times a week. The evidence for plaintiff, tended

to show that the use of his right leg was permanently impaired and that he would be a cripple for life.

Under these circumstances we could not with any degree of propriety hold that the verdict is excessive, warranting interference at our hands. In this connection see Dean v. Wabash Ry. Co., 229 Mo. 425, 129 S. W. 953.

We perceive no reversible error in the record, and it follows that the judgment should be affirmed. It is so ordered.

*Reynolds, P. J.,* and *Becker, J.,* concur.